George SHULOF, suing on behalf of himself and of all other persons similarly situated, Plaintiff,

v.

**WESTINGHOUSE ELECTRIC COR-PORATION, Defendant.**

No. 75 Civ. 4371.

United States District Court,
S. D. New York.

Nov. 13, 1975.

Edward Nathan, New York City, for plaintiff; Berthold H. Hoeniger, New York City, of counsel.

Rogers, Hoge & Hills, New York City, for defendant; John W. Douglas, Cyril V. Smith, Jr., Covington & Burling, Washington, D. C., of counsel.

LASKER, District Judge.

George Shulof brought this class action claiming that Westinghouse Electric Corporation perpetrated a fraud on

the market, in violation of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and in breach of common law fiduciary duty owed by Westinghouse to its stockholders. In particular, Shulof alleges that from August 5, 1974 through December 27, 1974 Westinghouse represented to its stockholders and the investing public that it intended to retain its Major Appliance Division (MAD)—a division which was suffering serious losses at the time—when in fact it was actively negotiating to sell MAD to White Consolidated Industries, as Westinghouse did by the end of the period. The thrust of the complaint is that Westinghouse's misstatements and incomplete statements as to its true plans artificially depressed the market of its common stock to the damage of the proposed class who sold their stock during the period such statements were made.

Westinghouse moves to transfer the case to the Western District of Pennsylvania pursuant to 28 U.S.C. § 1404(a). Shulof moves for a class action determination pursuant to Rule 23, Federal Rules of Civil Procedure.

§ 1404 provides that civil actions may be transferred "For the convenience of parties and witnesses, in the interest of justice, . . . to any other district . . . where it might have been brought." There is no dispute that this action might have been brought in the Western District of Pennsylvania.

■■■ For the reasons stated below we conclude that the case should be transferred to the Western District of Pennsylvania for the convenience of the witnesses and in the interests of justice.

The appropriateness of transfer depends on:

". . . (1) the convenience to parties; (2) the convenience of witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; (6) the practical problems indicating where the case can be tried more expeditiously and inexpensively; and (7) the interests of justice, a term broad enough to cover the particular circumstances of each case, which in sum indicate that the administration of justice will be advanced by a transfer." *Schneider v. Sears*, 265 F.Supp. 257, 263 (S.D.N.Y.1967) (footnotes omitted).

In this case, the convenience of the parties is a trade off, and in any event is of little moment in the disposition of the motion. While it is axiomatic that a plaintiff's choice of forum is entitled to great consideration, the adage has little weight in stockholder class actions because, as the Supreme Court has noted:

". . . Where there are hundreds of potential plaintiffs . . . all of whom could with equal show of right go into their many home courts, the claim of any one plaintiff that a forum is approriate merely because it is his home forum is considerably weakened." *Koster v. Lumberman's Mutual Co.*, 330 U.S. 518, 524, 67 S.Ct. 828, 832, 91 L.Ed. 1067 (1947). See also *Silverman v. Wellington Management Co.*, 298 F.Supp. 877, 879 (S.D.N.Y. 1969, Mansfield, J.)

Indeed, in the case at hand Shulof does not claim that this district is an appropriate forum "merely because it is his home forum," but rather for other reasons discussed below. It is also worthy to note that the complaint alleges (Par. 7(a)) that there are 24,000 stockholders of Westinghouse and that two other stockholder class actions making basically the same claims have been instituted in the Western District of Pennsylvania and the Northern District of Illinois.

A more difficult and significant question is whether transfer is justified for the convenience of witnesses. The record indicates (see affidavits of F. Neal Sever, sworn October 10 and October 30, 1975) that the three members of the Westinghouse "team" which negotiated the sale of MAD to White have their of-

fices at Westinghouse headquarters in Pittsburgh and reside in the Pittsburgh area; that of 5 other potential witnesses, including the Chairman of the Board of Westinghouse and its Vice President for Business Planning, as well as the President of White-Westinghouse Corporation, 4 live in the Pittsburgh area, and 1 in Minneapolis and that "presumably" potential witnesses employed by White reside in or near Cleveland, Ohio, since Cleveland is the White headquarters. Shulof properly criticizes Westinghouse for not naming the witnesses whom it intends to call, and in some cases such a deficiency might well be fatal. However, it is also true that it may be more difficult for a defendant than a plaintiff to specify which witnesses it will call, since its decision will turn in significant part on the content of the plaintiff's case in chief. It is to be noted that the plaintiff himself has not (with one exception) named his proposed witnesses but has merely defined them by their skills, office or expertise. In any event, it is reasonable to assume that Westinghouse may well call all of its employees, past or present, (as well as those at White) who have knowledge of the negotiations for the sale of MAD, and that its papers were intended to imply that the persons whom it did actually name would likely be witnesses at trial.

We find unpersuasive the plaintiff's argument that because he will rely primarily on depositions of Westinghouse and White officials taken in the S.E.C. investigation (and on requests to admit the truth of the statements made by the deponents) it will be unnecessary to call any significant number of Westinghouse or White personnel as live witnesses. The short answer is that even if the plaintiff believes he can prove his case by the use of such unusual devices, it is to be presumed (if not certain) that Westinghouse will wish to call such witnesses in person on defense.

Apparently because the plaintiff intends to rely primarily if not exclusively on documentary evidence to establish his case in chief, the testimony of the witnesses whom he says he will call will relate largely to questions of damages. They include: the specialist who makes the market in Westinghouse common stock on the New York Stock Exchange; "one or more" floor governors of the Exchange who supervise the Specialist's activities; "Those security analysts and investment advisors [names and number unspecified] who followed Westinghouse common during 1974, and who either issued reports or recommendations or advice with respect to such stock or who contacted Westinghouse between the beginning of May and the end of December 1974, in order to learn of current Westinghouse developments;" and a Wall Street Journal reporter. It is "believed," probably with reason, that most such persons live in the New York area, and they certainly work in New York.

The impression made by the incomplete specifications of possible witnesses by both parties is that the number of witnesses called by each of them may be approximately the same. If this were the sole consideration, one might conclude that the plaintiff's choice of forum should prevail, but there are countervailing considerations which lead to Pittsburgh. First, the testimony of the Westinghouse—White witnesses who will be called by Westinghouse will relate to the question of liability, while that of Shulof's witnesses will, on the whole, relate to damages. Since the trial of liability *must* occur, while that of damages may or may not, the balance tips in favor of the convenience of the witnesses whose testimony will be necessary beyond question. Second, it is probable that the attendance of the Westinghouse—White witnesses will be regularly required, at least throughout the trial as to liability, while the attendance of plaintiff's witnesses will be sequential, and none is likely to testify at substantial length. The result is that trial in New York would undoubtedly impose substantial expense on Westinghouse and White and, more important, notice-

ably interfere with the day to day management of their businesses,[1] while trial in Pittsburgh will not seriously interfere—if it interferes at all—with the business or activities of plaintiff's witnesses.

Although we thus conclude that for the convenience of witnesses—always an important factor—the case should be transferred to Pittsburgh, there are other reasons for doing so.

First, substantially all of the primary documentary material relating to the negotiations for the sale of MAD, and the actions and statements of the officers and directors of Westinghouse and White is located in Pittsburgh (or Cleveland) while none is in New York. Second, the case can be more promptly tried in the Western District of Pennsylvania, where the median time between issue to jury trial for the year ended June 30, 1975 was thirteen months as compared to twenty-five months in this district. (See Exhibit D of affidavit of F. Neal Sever sworn October 10, 1975).

In reaching our conclusion we have not attached weight to the fact that two other class actions making essentially identical claims are pending in Pittsburgh and Chicago since it is not clear whether those cases will remain for trial in the districts where they were brought or will themselves be transferred to New York or Pittsburgh, respectively. In any event, appropriate motions are pending before the Joint Panel for Multidistrict Litigation which will result in the coordination of pre-trial discovery for all three cases, even if they should ultimately be tried in different districts from each other. Nor have we attached weight to the fact that there is pending before us a suit brought by the SEC against Westinghouse for injunctive relief. The transfer of the Shulof action to Pittsburgh will in no way interfere with the abilities of his attorneys—who are located in New

York—to coordinate the prosecution of this case with the SEC case, to the extent that that will be helpful.

Since the case will be transferred to Pittsburgh, the motion for a class action determination is denied without prejudice to renewal in the transferee court.

The motion to transfer this action is granted. The Clerk of this Court shall immediately transmit the file of the case to the Clerk of the United States District Court for the Western District of Pennsylvania. The motion for a class action determination is denied without prejudice.

It is so ordered.

---

1. In this connection it should be noted that Cleveland is only 130 miles from Pittsburgh, and commuting, or near commuting, would therefore be possible for witnesses from White if the trial were held in Pittsburgh, but not if held in New York.