Helen McCRYSTAL et al., Plaintiffs,

v.

BARNWELL COUNTY, SOUTH CAROLINA, et al., Defendants.

No. 76 Civ. 757 (CHT).

United States District Court,
S. D. New York.

Oct. 27, 1976.

Wikler, Gottlieb, Taylor & Howard, New York City by Leonard H. Moche, New York City, for plaintiffs.

Mudge, Rose, Guthrie & Alexander, New York City by Laurence V. Senn, Jr., New York City, for defendant Barnwell County.

Rogers, Hoge & Hills, New York City by W. Hubert Plummer, for defendant Sinkler, Gibbs, Simons & Guerard; Skadden, Arps, Slate, Meagher & Flom, New York City, of counsel.

Donovan, Leisure, Newton & Irvine, New York City by Walter L. Stratton, Phillips P. O'Shaughnessy, for defendant Brown, Jefferies & Boulware.

Shereff, Friedman, Hoffman & Goodman, New York City by Richard S. Rothberg, for defendant Elliott, Davis & Co.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City by Robert L. Laufer, Ernest Rubenstein, for defendants Bertram L. Rothkopf and Bernard Silverman.

Mirabelli & Gould, Washington, D. C. by Mario V. Mirabelli, for defendant Municicorp of California, Inc.

Nathan Margolin, pro se.

Gold, Farrell & Marks, New York City by Leonard M. Marks, for defendant Hermann Daiber.

Weiss, Rosenthal, Heller, Schwartzman & Lazar, New York City by Howard L. Mann, for defendant Michael Pineles.

## MEMORANDUM

TENNEY, District Judge.

This is an action brought under Section 17(a) of the Securities Act of 1933 and Section 10(b) of the Securities Exchange Act of 1934 for alleged fraud in the sale of industrial revenue bonds issued by defendant Barnwell County, South Carolina ("Barnwell County"). Four motions are currently before this Court. First, Barnwell County and several other defendants have moved for a transfer of venue to the United States District Court for the District of South Carolina. Second, the plaintiffs have moved for leave to take depositions which they consider necessary to their opposition to the transfer motion. Third, the plaintiffs have moved for certification of the class they seek to represent. Finally, the defendants have moved for a stay of the class action determination pending decision on the transfer motion. For the reasons stated below, the motion for a transfer of venue is granted, and, accordingly, the motion for leave to take depositions is denied. No action is taken on the motion for class action certification—that decision is left to the transferee court. The motion for a stay of the class action determination pending decision on the transfer motion is now moot.

Plaintiffs in this action are seven individuals who purchased Barnwell County First Mortgage Industrial Revenue Bonds, Series 1973 ("Barnwell County Bonds") either in the original issue in 1973 or in the over-the-counter bond market between 1973 and 1975. They seek to represent the class of all such purchasers of Barnwell County Bonds, estimated to exceed 250 in number. Defendants currently served with process in the action number 13: five corporate entities and eight individuals who were officers or directors of two additional corporate entities now adjudged bankrupts. Defendant Barnwell County was the issuer of the bonds under authority granted by Act 103 of the Acts of the General Assembly of South Carolina for 1967. Defendant Sinkler, Gibbs, Simons & Guerard ("Sinkler, Gibbs"), a South Carolina law firm, acted as bond counsel in connection with the issuance of the Barnwell County Bonds. Defendant Brown, Jefferies & Boulware ("Brown, Jefferies"), another South Carolina law firm, acted as counsel to Barnwell County at the time of the issuance of the Barnwell County Bonds. Defendant Elliott, Davis & Company ("Elliott, Davis"), a South Carolina accounting firm, conducted, in connection with the offering of the Barnwell County Bonds, an audit of Anchorage Carolina Corporation ("Anchorage"), the company whose plant construction the sale of the bonds was meant to finance. Defendants Rothkopf, Daiber, Silverman, Perces and Wellbrock were all directors of Anchorage. All but Wellbrock held executive positions with Anchorage or with its wholly-owned subsidiary, Entree Knits, Inc. ("Entree"). On March 13, 1975, both Anchorage and Entree were adjudged bankrupts in the course of Chapter XI proceedings in this District (74 B 1723, S.D.N.Y.). Defendants Weisman, Margolin and Pineles were directors and officers of Paragon Securities Company ("Paragon"), the underwriter for the Barnwell County Bond offering. Paragon was adjudicated a bankrupt on August 28, 1973, in an as-yet-unconcluded bankruptcy proceeding in the United States District Court for the District of New Jersey. (B–1010–73/6181, D.N.J.). Defendant Municicorp of California ("Municicorp") was the successor (by change of name only) to Paragon Securities Inc. of California, which, with Paragon, acted as an underwriter for the bond offering in California.

Briefly stated, the facts alleged by the complaint are these. On April 1, 1973, defendant Barnwell County, through its County Board, entered into a lease agreement with Anchorage, a Delaware corporation which produced, manufactured and

sold fabrics, for a "project" whose construction and equipment were to be financed by the proceeds of the Barnwell County Bonds. The completed plant was to be used by Anchorage in the manufacture of double-knit fabrics. Local accountants, Elliott, Davis, were employed to examine the financial statements of Anchorage for its previous fiscal year. The local law firm of Sinkler, Gibbs were employed as bond counsel. The underwriter was Paragon Securities Co., a New Jersey corporation, which had subsidiaries in New York, Florida and California.

On April 30, 1973 the Official Statement concerning the Barnwell County Bonds was issued. The plaintiffs allege that this Official Statement falsely stated or omitted to state at least 21 material facts. The plaintiffs also allege that the South Carolina statute authorizing Barnwell County to issue industrial revenue bonds, as well as the "custom and practice of the market for industrial revenue bonds of the type represented by the Barnwell Bonds" (Complaint ¶ 27(d)), required the County Board to make a study of the feasibility of the project to be financed by the bonds but that this study was not performed, despite the County Board's representations to the State Budget and Control Board and to its counsel that it had done so.[1] Further, the plaintiffs maintain that the opinion letters issued by Sinkler, Gibbs and Brown, Jefferies representing that Barnwell County had "lawful authority for the issuance and sale of the Bonds" and that the county was in compliance with the South Carolina statute were rendered with knowledge that such statements were false or with such reckless disregard of the facts as to amount to a fraud. Finally, the plaintiffs allege that the defendants, by the use of the Official Statement and "other deceptive practices," obtained a favorable rating from the Fitch Investment Service, which was "materially false and misleading" and was relied upon by the plaintiffs in their purchases of the bonds. (Complaint ¶¶ 28–30).

## TRANSFER OF VENUE

The power of a district court to transfer a case when venue is properly laid in the transferor court is governed by 28 U.S.C. § 1404(a) which provides:

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

No party has challenged the correctness of venue either in this district or in the District of South Carolina, the proposed transferee district.[2] Thus, the Court's attention need focus only on the appropriateness of transfer to South Carolina. Judge Weinfeld of this district has offered the following exegesis of the statute's terse transfer criteria:

"The court's discretion under section 1404(a) is broader than under the forum non conveniens doctrine, but the criteria applicable under the statute are substantially those developed under the older doctrine. These include: (1) the convenience to parties; (2) the convenience of witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; (6) the practical problems indicating where the case can be tried more expeditiously and inexpensively; and (7) the interests of justice, a term broad enough to cover the particular cir-

---

1. Plaintiffs allege in the alternative that if the study was done, it was conducted "in such a fraudulent manner or with such reckless disregard of the facts . . . as to amount to a fraud." Complaint ¶ 27(d).

2. The venue provisions of the securities code are broad. 15 U.S.C. § 78aa allows an action to be brought in the district "wherein any act or transaction constituting the violation occurred" or where "the defendant is found or is an inhabitant or transacts business." Once venue is properly laid, service of process may take place in any district "of which the defendant is an inhabitant or wherever the defendant may be found." Under these standards, it must be concluded that both the Southern District of New York and the District of South Carolina are proper forums for this action.

cumstances of each case, which in sum indicate that the administration of justice will be advanced by a transfer." *Schneider v. Sears,* 265 F.Supp. 257, 263 (S.D.N.Y.1967) (footnotes deleted).

■ The balance of the convenience to the parties in the present case tips towards transfer. The current plaintiffs are seven individuals, all of whom live in New York or New Jersey, who seek to represent a class of at least 249 purchasers of Barnwell County Bonds, some 76% of whom are alleged to live in Connecticut, New York, New Jersey and Pennsylvania. It is further alleged that no bondholders reside in South Carolina. Several factors reduce the significance of the plaintiffs' residence, however. First, the participation of the plaintiffs in the trial will be minimal; if they give testimony it will probably be "no more than a recitation of the circumstances under which they purchased their stock." *Saminsky v. Occidental Petroleum Corp.,* 373 F.Supp. 257, 259 (S.D.N.Y.1974); *Litwin v. Feldman,* [1970–1971 Transfer Binder] CCH Fed.Sec.L.Rep. ¶ 92,857, at 90,201 (S.D.N.Y.1970); *Schneider v. Sears, supra,* 265 F.Supp. at 263. The plaintiffs claim that their convenience should be given increased weight since their presence will be required to testify in response to the defendants' affirmative defenses. Insofar as they concern the plaintiffs directly, however, these defenses go to the question of damages and thus the plaintiffs' convenience must be subordinated to the convenience of those parties who will testify on the question of liability. *See Shulof v. Westinghouse Electric Corp.,* 402 F.Supp. 1262, 1264 (S.D.N.Y.1975). Second, as the court stated in *Blender v. Sibley,* 396 F.Supp. 300, 304 (E.D.Pa.1975), "an argument premised on geographical distribution of shareholders who will not actively take part in the trial is make-weight, and is far outweighed by the needs of the active participants in this litigation." Finally, there is authority that the residence of the plaintiffs is accorded less weight in a shareholder class action. *E. g., Shulof v. Westinghouse Electric Corp., supra,* 402 F.Supp. at 1263, *citing Koster v. Lumbermen's Mutual*

*Co.,* 330 U.S. 518, 524, 67 S.Ct. 828, 91 L.Ed. 1067 (1947).

The majority of party testimony on the question of liability will come from the defendants, particularly those located in South Carolina. These defendants are Barnwell County, the public entity which issued the bonds; Sinkler, Gibbs, the bond counsel; Brown, Jefferies, counsel to Barnwell County; Elliott, Davis, the accountants; and Hermann Daiber, former President of Anchorage and the person who was in charge of Anchorage's plant operations in South Carolina. Members of each of these entities will be required to testify as to their activities in connection with the bond issue. Since they are charged with fraud, their presence before the trier of fact will be particularly important, for demeanor "may well mean the difference between acceptance and rejection of crucial testimony." *Saminsky v. Occidental Petroleum Corp., supra,* 373 F.Supp. at 260, *quoting Oil & Gas Ventures—First 1958 Fund, Ltd. v. Kung,* 250 F.Supp. 744, 756 (S.D.N.Y.1966). Moreover, since their presence at trial will be continually required, forcing them to come to New York for the trial could seriously disrupt the practices of the law firms and accountants and interfere with the government of Barnwell County. *See Shulof v. Westinghouse Electric Corp., supra,* 402 F.Supp. at 1264–65.

Five of the individual defendants have opposed the transfer; defendant Municorp, a California resident, states that it is "content to have the case proceed where it is pending." (Mirabelli Affidavit ¶ 5). All of the individuals opposing transfer were directors or officers of Anchorage, Entree, or Paragon, now bankrupt; all reside in New York or New Jersey. Transferring this action to South Carolina will impose a hardship on these individuals. Their presence in this district should not be persuasive, however, when the focus of the concern of this case is South Carolina. *Stanley v. Carret,* [1970–1971 Transfer Binder] CCH Fed.Sec.L.Rep. ¶ 92,952, at 90,506 (S.D.N.Y.1971). On balance the hardship on the many members of the

South Carolina corporate entities who are alleged to be at the heart of the fraudulent conduct would be as great or greater than that of the individual defendants or the plaintiffs were the action allowed to continue in the Southern District of New York.

The convenience of crucial non-party witnesses tips decidedly toward transfer. Defendants list a number of such witnesses who are located in South Carolina: the members of the Budget and Control Board of South Carolina who approved Barnwell County's petition for the issuance of the bonds; members of the law firm of Blatt, Fales, Peeples, Bedingfield & Loadholt, attorneys for Anchorage Carolina Corporation; officers of American Bank and Trust Company, the original trustee under the Bond Indenture; trust officers of the successor trustee, Southern Bank and Trust Company; the Mayor of Williston, South Carolina; and the Chairman of South Carolina's State Development Board. Plaintiffs state that they will call the following non-party witnesses: members and associates of the New York City law firm of Paul, Weiss, Rifkind, Wharton & Garrison ("Paul, Weiss"), general counsel to Anchorage; officers, agents and employees of Fitch Investment Service, presumably residents of New York; and experts in the customs and practices of the bond market and the economic aspects of the textile industry, "who are more accessible to this Court." (Moche Affidavit ¶ 32). The convenience of only one of these groups—Fitch Investment Service—need be considered here. Paul, Weiss states that it had no role in the preparation of the Official Statement, a task which was left to Sinkler, Gibbs, the South Carolina bond counsel. (Rubenstein Affidavit ¶¶ 4–6). Paul, Weiss was not joined as a defendant. However, any testimony which they might be required to give would not be inconvenient to them since they are serving as counsel to defendants Rothkopf and Silverman. Finally, the convenience of expert witnesses is entitled to little or no weight in deciding a transfer motion. *Herman v. Doug Frank Development Corp.*, 385 F.Supp. 767, 769 n.10 and cases cited therein (S.D.N.Y.1974); *Wibau,*

*Westdeutsche Industrie und Strassenbaumachinengesellschaft mbH v. American Hoist & Derrick Co.*, 293 F.Supp. 273, 275 (S.D.N. Y.1968).

Furthermore, if process is necessary to obtain the presence of any of the above-listed witnesses, the South Carolina district court will be able to compel the attendance of the many South Carolina witnesses, who are beyond the process of this Court. *See* Fed.R.Civ.P. 45(e).

Although documents will inevitably play an important role in this action, their location has little effect on the transfer motion. The documents of the South Carolina defendants are presumably located in South Carolina. Many of the documents of Anchorage are presently in New York, in the custody of the trustee in bankruptcy. Similarly, Paragon's records are in the custody of the New Jersey trustee in bankruptcy. Yet, the bulk of work on these documents will take place during discovery; certainly New York counsel can examine the documents in New York and New Jersey. Furthermore, those documents which must be produced at trial can be made available "via the modern miracle of photographic reproduction." *Herbst v. Able*, 278 F.Supp. 664, 666–67 (S.D.N.Y.1967); *see* Fed.R.Evid. 1003.

Several of the circumstances of this case which are best discussed under the heading "the interests of justice" provide the strongest reasons why this action should be transferred. First, this is an action concerning public bonds issued pursuant to a state statute in which the governmental body which issued the bonds, Barnwell County, is named as a defendant. The great majority of acts complained of took place in South Carolina; many of these directly involved units of South Carolina's government. The strong local character of this action argues in favor of transfer. *See Stanley v. Carret, supra,* [1970–1971 Transfer Binder] CCH Fed.Sec.L.Rep. at 90,505. The fact that many of the bonds were purchased in the over-the-counter market in New York or New Jersey has little effect here. *Id.* Moreover, those individual de-

fendants who are former directors and officers of Anchorage and who oppose transfer chose to do business in South Carolina and to use the power of the local government to their benefit. Second, it is alleged that South Carolina law was violated by defendant Barnwell County in that it failed to perform the statutorily required "feasibility study." Issues of South Carolina law and inquiries into the workings of South Carolina government are better left to South Carolina District Judges. *Gallen v. Howard D. Johnson Co.,* 271 F.Supp. 680, 682–83 (S.D.N.Y.1967); *Glickenhaus v. Lytton Financial Corp.,* 205 F.Supp. 102, 104 (D.Del. 1962).

█ Third, consideration of comparative calendar conditions in the Southern District of New York and the District of South Carolina is relevant to this motion. *Shulof v. Westinghouse Electric Corp., supra,* 402 F.Supp. at 1265. The parties are likely to get a much speedier disposition of this matter in South Carolina.[3] A quick resolution of this matter is particularly important since both public bodies and respected professionals have been accused of fraud. Furthermore, such accusations, if left unresolved, could unfairly stain the reputation of industrial revenue bonds in South Carolina. *See Polaroid Corp. v. Casselman,* 213 F.Supp. 379, 384 (S.D.N.Y.1962).

█ The plaintiffs have suggested several other factors as favoring retention. First, they maintain that they cannot get a fair trial in South Carolina because of alleged close associations between the five district judges for the District of South Carolina and several of the defendants in the action. Their motion for leave to take depositions is directed toward an exploration of this issue. However, plaintiffs' contention ignores relevant law. A recent amendment to the United States Code requires any district judge to disqualify himself "in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). If any district judge designated to hear this case in South Carolina felt it necessary to disqualify himself, he could quickly and easily be replaced by another district judge, either from within his district or by designation from another district.

The plaintiffs also suggest that the importance of industrial revenue bonds to the economy of South Carolina and the presence as defendants' witnesses of many respected South Carolina public officials would result in prejudice against them. This contention is disposed of by the disqualification statute insofar as it relates to the attitudes of district judges. If the plaintiffs are questioning the impartiality of jurors, the contention is merely speculative and less than compelling. Furthermore, if any such bias were found to exist, it could be corrected during voir dire.

█ Second, the plaintiffs suggest that the presence of the bankruptcy proceedings concerning Anchorage and Paragon in district courts in New York and New Jersey provides substantial reasons for keeping the fraud action in this Court. A related action is also pending in South Carolina, however. The foreclosure proceeding on the mortgage securing the bonds is pending in the Barnwell County courts, and the result may be the recovery of as much as $1,250,000, which would have a direct effect on the instant case. Moreover, at least one court has transferred a private civil securities fraud case even where an SEC injunction action was pending in the transferor district. *Shulof v. Westinghouse Electric Corp., supra,* 402 F.Supp. at 1265. Thus, aside from its effect on the location of relevant documents, a factor discussed above, the location of independent bankruptcy proceedings has little significance with respect to the transfer motion in this securities action.

## CLASS CERTIFICATION

█ Having decided to transfer this action to the District Court for the District of

---

3. The median time interval from issue to trial in civil cases in fiscal year 1975 was 25 months in the Southern District of New York as opposed to eight months in the District of South Carolina. *Management Statistics for United States Courts, 1975,* at 24, 41.

South Carolina, this Court reaches no decision on the plaintiffs' motion for class certification, which will be reserved for consideration by the transferee court. *See Litwin v. Feldman, supra,* [1970–1971 Transfer Binder] CCH Fed.Sec.L.Rep. at 90,202; *In re Plumbing Fixture Cases,* 298 F.Supp. 484, 495–96 (Jud.Pan.Mult.Lit.1968).

█ For the reasons discussed above, the motion to transfer venue is granted. The Clerk of this Court shall immediately transmit the file of the case to the Clerk of the United States District Court for the District of South Carolina. The motion for leave to take depositions is denied, and no action is taken on the class certification motion.

So ordered.