WASHINGTON NATIONAL LIFE INSURANCE COMPANY OF NEW YORK and Washington National Insurance Company, Plaintiffs,

v.

MORGAN STANLEY & CO. INCORPORATED, Howard, Well, Labouisse, Frederichs, Incorporated, Alan Arnold, Peter Avalone, Nebraska Investment Finance Authority, Norwest Bank, Minneapolis, N.A., Kutak, Rock, & Campbell, The First Boston Corporation, Bear, Stearns & Co., Inc., Dillon, Read & Co., Inc., Donaldson, Lufkin & Jenrette Securities Corporation, Kidder, Peabody & Co. Incorporated, Lazard Freres & Co., Prudential–Bache Securities Inc., Salomon Brothers Inc., Smith Barney, Harris Upham & Co., Incorporated, Wertheim Schroder & Co. Incorporated, Dean Witter Reynolds Inc., George K. Baum & Company, Blunt Ellis & Loewi Incorporated,

Boettcher & Company, Inc., Dain Bosworth Incorporated, Hanifen, Imhoff Inc., Interstate Securities, Lovett, Mitchell, Webb & Garrison, Masterson Moreland Sauer Whisman, Inc., McDonald & Company Securities, Inc., Morgan, Keegan & Company, Inc., Rauscher Pierce Refsnes, Inc., Rotan Mosle Inc., Smith Hayes Financial Services Corporation and Wheat, First Securities, Inc., Defendants.

No. 90 Civ. 3342 (MJL).

United States District Court,
S.D. New York.

May 9, 1997.

---

## OPINION AND ORDER

LOWE, District Judge.

Before the Court is the motion of plaintiffs Washington National Life Insurance Company of New York and Washington National Insurance Company ("Plaintiffs"), pursuant to 28 U.S.C. § 1404(a), to transfer this action to the District of Nebraska. For the reasons stated below, Plaintiffs' motion is denied.

## BACKGROUND

On May 16, 1990, Plaintiffs commenced this securities fraud action alleging violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), Rule 10b–5, as adopted thereunder by the Securities and Exchange Commission, 17 C.F.R. § 240.10b–5, Section 1962 of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962,[1] and breach of contract, civil conspiracy, negligence, breach of fiduciary duty and common law fraud.

---

1. Since the original filing of the Complaint, Plaintiffs' RICO claims have been dismissed. *See In re Taxable Municipal Bond Secs. Litigation,* No. MDL 863, 1993 WL 534035 (E.D.La. Dec.13, 1993) (Sear, C.J.).

Plaintiffs are purchasers of taxable municipal bonds issued by the Nebraska Investment Finance Authority ("NIFA").[2] NIFA, a public instrumentality of the State of Nebraska, was established by the Nebraska Legislature in 1983 to encourage agricultural and other economic development in that state. On October 27, 1986, NIFA enacted a resolution authorizing a $200,000,000 issuance of taxable municipal bonds. The bonds were issued on November 13, 1986.

Numerous parties played substantial roles in effectuating the NIFA bond offering. The bonds were underwritten by an underwriting syndicate led by Drexel Burnham Lambert, Inc. ("Drexel"), Howard, Weil, Labouisse, Friedrichs, Inc. ("Howard Weil"), and Morgan Stanley & Co. ("Morgan Stanley"). Defendant Peter Avalone, the Senior Vice President of Drexel and head of Drexel's municipal bond department, played a significant role in structuring and underwriting the NIFA bonds. Defendant Kutak, Rock & Campbell ("Kutak") served as bond counsel and also as NIFA's counsel, rendering legal advice in connection with the NIFA bonds. Defendant Norwest Bank, Minneapolis, N.A. ("Norwest"), served as bond trustee. The offering materials stated that the bond proceeds would be used to raise money for salutary public purposes, such as providing funds for agricultural loans.

Following the underwriters' purchase of the bonds, the indenture trustee used the bond proceeds to purchase Guaranteed Investment Contracts ("GICs") from Executive Life Insurance Corporation ("ELIC"), where the money would remain until loans were made. ELIC was a California insurance company and subsidiary of First Executive Corporation; both companies were headed by Fred Carr. ELIC invested the proceeds from the sale of the GICs in "junk bonds," although the offering materials did not disclose that the proceeds would be so invested. In June 1986, Standard & Poors, Inc. ("S & P") issued a AAA rating to ELIC. The junk bond market collapsed in the early months of 1989. As a result, S & P downgraded ELIC's rating, as well as the rating of the taxable municipal bonds, which resulted in the decline of the bonds' value.

## PROCEDURAL BACKGROUND

Plaintiffs initially filed this action in the Southern District of New York. On July 23, 1990, defendants Morgan Stanley, Howard Weil, ELIC, and NIFA moved to transfer the case, pursuant to 28 U.S.C. § 1404(a) ("Section 1404(a)"), to the District of Nebraska. At that time, Plaintiffs opposed the motion. The Court referred the transfer motion to Magistrate Judge Buchwald. In a Report and Recommendation dated November 27, 1990 ("1990 Report"), the Magistrate Judge recommended that the Court grant the defendants' motion to transfer the case to Nebraska. *See* Report and Recommendation, dated Nov. 27, 1990, at 15.

On the same day that the 1990 Report was issued, the Judicial Panel on Multi–District Litigation ("MDL Panel") transferred the case, pursuant to 28 U.S.C. § 1407 ("Section 1407"), to the Eastern District of Louisiana, consolidating the case with other related cases[3] for pre-trial purposes. After the close of approximately five years of discovery, nearly all of the cases settled.[4] Plaintiffs, however, opted out of settlement. By order dated May 16, 1995 ("May 1995 Order"), Chief Judge Sear of the Eastern District of Louisiana ordered the non-settling

---

**2.** The Court has adopted, in large part, a summary of the facts from an earlier decision in this case. *See id.* at *1.

**3.** Chief Judge Morey L. Sear of the Eastern District of Louisiana presided over the consolidated action. The consolidated action consisted of twelve putative class actions and thirty "tag-along" actions related to eight taxable municipal bond offerings throughout the country. *See In re Taxable Municipal Bond Secs. Litig.*, No. MDL 863, 1995 WL 637822, at *1 (E.D.La. Oct.30, 1995) (Sear, C.J.).

**4.** Of the cases transferred by the MDL Panel to the Eastern District of Louisiana, all claims settled as of December 29, 1995 except: (1) opt-out plaintiffs Washington National Life Insurance Company and Washington National Insurance Company, and (2) four tag-along actions. *See id.* at *1; *In re Taxable Municipal Bond Secs. Litig.*, No. MDL 863, 1995 WL 766339, at *1 (E.D.La. Dec.29, 1995) (Sear, C.J.).

parties to submit memoranda on whether the Louisiana court should retain the cases for trial or remand the cases to the original transferor courts. *See* Mem. and Order, dated May 16, 1995, at 3. Pursuant to the May 1995 Order, a majority of the defendants requested that Chief Judge Sear retain the case for trial, and Plaintiffs requested transfer to Nebraska. In an initial order dated October 27, 1995 ("October 1995 Order"), Chief Judge Sear concluded, without discussion, "that pursuant to 28 U.S.C. § 1404(a) Washington National's claims are properly transferred to Nebraska as opposed to New York." *See In re Taxable Municipal Bond Secs. Litig.*, No. MDL 863, 1995 WL 637822, at *2 n. 9 (E.D.La. Oct.30, 1995). Accordingly, Chief Judge Sear ordered that a suggestion of remand be issued to the MDL Panel, specifically recommending that this case be transferred to the District of Nebraska. *Id.* at *2.

Prior to the entry of a transfer order, however, Defendants moved for reconsideration, arguing that the case should be remanded back to the Southern District of New York as opposed to Nebraska. Chief Judge Sear allowed the parties to brief the issue "on the basis that they were not previously afforded the opportunity to make this argument." *In re Taxable Municipal Bond Secs. Litig.*, No. MDL 863, 1995 WL 731693, at *1 (E.D.La. Dec.7, 1995). On December 29, 1995, Chief Judge Sear reversed his earlier recommendation and recommended to the MDL Panel that the case be remanded to the Southern District of New York ("December 1995 Order"). *See In re Taxable Municipal Bond Secs. Litig.*, No. MDL 863, 1995 WL 766339, at *3 (E.D.La. Dec.29, 1995). On January 4, 1996, the MDL Panel issued a conditional remand order adopting Chief Judge Sear's recommendation to remand the case to the Southern District of New York. Within the time permitted by Rule 14 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, Plaintiffs filed a Notice of Opposition to Conditional Remand Order, citing the 1990 Report and the October 1995 Order. On April 12, 1996, the MDL Panel adopted Chief Judge Sear's recommendation and remanded the case to this Court.

*See* Remand Order, dated April 12, 1996, at 1–2.

The transfer issue in this case has come full circle: Plaintiffs move this Court to transfer the case to the District of Nebraska, and Defendants urge the Court to deny any such transfer. As a result, each side finds itself vehemently supporting a position to which it was strenuously opposed when the issue came before the Magistrate Judge in 1990.

## I. *Law of the Case Doctrine*

Under the "law of the case" doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983) (dictum) (citation omitted); *see also Pescatore v. Pan American World Airways, Inc.*, 97 F.3d 1, 7–8 (2d Cir.1996). "Federal courts routinely apply law-of-the-case principles to transfer decisions of coordinate courts. Indeed, the policies supporting the doctrine apply with even greater force to transfer decisions than to decisions of substantive law; transferee courts that feel entirely free to revisit transfer decisions of a coordinate court threaten to send litigants into a vicious circle of litigation." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816, 108 S.Ct. 2166, 2178, 100 L.Ed.2d 811 (1988) (citations omitted). Although the doctrine does not restrict a court's authority to revisit a previously decided issue, "courts should be loathe to do so in the absence of extraordinary circumstances, such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" *Id.* at 817, 108 S.Ct. at 2178 (quoting *Arizona*, 460 U.S. at 618 n. 8, 103 S.Ct. at 1391 n. 8); *see also Corporacion de Mercadeo Agricola v. Mellon Bank Int'l*, 608 F.2d 43, 48 (2d Cir. 1979) (finding law of the case doctrine a rule of practice, not a restriction on a court's jurisdiction); *Dictograph Prods. Co. v. Sonotone Corp.*, 230 F.2d 131, 135 (2d Cir.1956) (same)

The grounds, or special circumstances, upon which a court may reconsider an issue previously determined in an earlier

stage of the same litigation are: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or to prevent manifest injustice. *DiLaura v. Power Auth.*, 982 F.2d 73, 76 (2d Cir.1992) (citing *Virgin Atl. Airways v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir.1992)); *see also Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516–17 (10th Cir.1991) (holding that court should not reconsider prior ruling of transferor court unless governing law has changed, new evidence becomes available, clear error has been committed or manifest injustice will result). Thus, absent special circumstances, courts in this Circuit have refused to revisit transfer orders from another court. *See, e.g., Herskowitz v. Charney*, No. 93 Civ. 5248, 1994 WL 150812, at *2 (S.D.N.Y. April 18, 1994) (denying motion to retransfer because original forum ruled on issue and no special circumstances present to justify reversing law of case); *Repp v. Webber*, 142 F.R.D. 398, 400–01 (S.D.N.Y.1992) (refusing to retransfer without impelling and unusual circumstances); *BMC Indus., Inc. v. Employers Ins. of Wausau*, No. 90–CV–751, 1991 WL 12800, at *2 (N.D.N.Y. Feb.4, 1991) (holding that commencement of second action in Minnesota did not constitute "the type of changed circumstances which would warrant retransfer" to Minnesota); *Dresser Indus., Inc. v. First Travel Corp.*, Nos. 88 Civ. 581E, 90 Civ. 470E, 1990 WL 159037, at *3–4 (W.D.N.Y. Oct.11, 1990) (denying motion to retransfer where movant had full and fair opportunity to litigate matter previously, transferor court's order was not manifestly erroneous and no "impelling and unusual" circumstances existed).

In the December 1995 Order, the Eastern District of Louisiana determined that this case should be remanded back to this Court rather than be transferred to the District of Nebraska. *See In re Taxable Municipal Bond*, 1995 WL 766339. That transfer decision became the law of this case, to be adhered to by a court of coordinate jurisdiction, including this Court. Absent one of the exceptions enumerated in *DiLaura*, this Court may not revisit the transfer issue. The Court will address the applicability of each exception in turn.

### A. Intervening Change in Law

■ Courts may reconsider previous holdings in the same litigation if there has been an intervening change in the law. *See. e,g., Pescatore*, 97 F.3d at 9 (rejecting law of case doctrine where subsequent Supreme Court decision "embodie[d] an intervening change in controlling law"); *N.L.R.B. v. Coca–Cola Bottling Co.*, 55 F.3d 74, 78 (2d Cir.1995) (finding that change in agency policy warrants reconsideration of prior holding). Because none of the parties allege a change in the law since the December 1995 Order was issued, this exception does not warrant reconsideration in this case.

### B. New Evidence

■ A court may revisit the law of the case where new evidence has surfaced or a more complete record has developed. *See Sagendorf–Teal v. County of Rensselaer*, 100 F.3d 270, 277 (2d Cir.1996) (holding that new evidence permitted court that denied defendants' motion for summary judgment to later grant defendants' motion to dismiss); *Childress v. Taylor*, 798 F.Supp. 981, 994 (S.D.N.Y.1992) (holding that determination of alleged copyright infringer's good faith on summary judgment may be reconsidered based upon new evidence elicited at trial). Plaintiffs argue that "developments since this case left the MDL process require that the transfer issue be revisited *de novo*." Pls.' Reply Mem. at 7–8. Specifically, Plaintiffs contend that certain developments, "i.e., the recently ascertained unavailability of two critical liability witnesses, were not before Judge Sear, [and] provide a completely independent basis for this Court to review the question of transfer." *Id.* at 8. The Court disagrees.

In support of their motion, Plaintiffs submit affidavits from the two allegedly "critical" witnesses residing in Nebraska: former NIFA Executive Director Dennis Vellek ("Vellek") and former Senator of the Nebraska Unicameral Loran Schmit ("Schmit"). *See* Vellek Aff.; Schmit Aff. (attached to Hecht Aff. as Exs. O and T). Plaintiffs maintain that they filed this action in New York because, at that time, they were un-

aware of Schmit's existence or of Vellek's willingness to speak to them. *See* Pls.' Mem. at 13. Plaintiffs further contend that, although they became aware of Vellek's and Schmit's proposed testimony during discovery, due to the limited scope of formal discovery in the MDL proceedings they were able to interview, but not depose, these two witnesses. *See* Pls.' Mem. at 12; Hecht Aff. ¶ 12.[5] According to Plaintiffs, Vellek now refuses to appear in New York to testify at trial and Schmit may be unable to travel to New York for trial due to a serious illness in his family. *See* Hecht Aff. ¶ 4. Plaintiffs urge the Court to transfer the case so that a jury will hear the live testimony of these two witnesses who are outside the subpoena power of this Court.[6]

The appearance of both Vellek and Schmit as "critical" witnesses residing in Nebraska is not a development that surfaced after the December 1995 Order. In fact, Plaintiffs concede that they were aware of Vellek's proposed testimony in May 1993 at the latest, and Schmit's proposed testimony within two months of filing their complaint. *See* Pls.' Mem. at 12–13. Plaintiffs, therefore, contend that the witnesses' unavailability in New York is a recent development. Contrary to Plaintiff's assertions, however, Chief Judge Sear squarely addressed the unavailability of these witnesses in the December 1995 Order:

> Washington National urges that two of its key witnesses, Dennis Vellek and Loran Schmit, are beyond the subpoena power of the New York court. However, as defendants point out, this circumstance must have been within Washington National's knowledge at the time it filed suit in the Southern District of New York, and there has been ample opportunity for these witnesses to be deposed. Accordingly, I do not consider this factor to weigh overwhelmingly in favor of the Nebraska forum.

*In re Taxable Municipal Bond,* 1995 WL 766339, at *2. This Court agrees with Chief Judge Sear's reasoning in the December 1995 Order. It should not have surprised Plaintiffs after filing their complaint in New York that potential witnesses, particularly those affiliated with NIFA, would reside in Nebraska and would be unwilling to testify in New York. Accordingly, the Court does not consider this "development" to be new evidence warranting reconsideration of the December 1995 Order.

### C. Clear Error or Manifest Injustice

■ The Court may depart from the law of the case if the previous decision is clearly erroneous. *See Christianson,* 486 U.S. at 807, 108 S.Ct. at 2173. Plaintiffs argue clear error on three grounds: (1) Chief Judge Sear failed to address or misapplied several critical factors for transfer; (2) Chief Judge Sear failed to adopt the 1990 Report; and (3) Chief Judge Sear improperly shifted the burden of proof to Plaintiffs on Defendants' reconsideration motion. *See* Pls.' Reply Mem. at 16–17.

#### 1. Motion to Transfer Factors

■ In the December 1995 Order, Chief Judge Sear addressed the standards and factors to be considered under Section 1404(a), as articulated by the Supreme Court in *Gulf Oil v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). *See In re Taxable Municipal Bond,* 1995 WL 766339, at *1–2. Specifically, Chief Judge Sear addressed the: (1) convenience of the parties; (2) convenience of witnesses; (3) ease of access to sources of proof; (4) situs of the relevant events; (5) applicability of state law; (6) availability of process to compel non-party witnesses; (7) burden on a New York jury; and (8) docket congestion. *See id.* at *1–3. As Plaintiffs concede, these are the same

---

**5.** References to "Hecht Aff. ——" are to the Affidavit of Charles J. Hecht In Support Of Plaintiffs' Motion For An Order Transferring The Trial Of This Action Pursuant To 28 U.S.C. § 1404(a) From New York To Nebraska dated December 20, 1996.

**6.** At this time, the availability of Schmit remains questionable. In his affidavit, Schmit stated that if his family circumstances change, he "would do everything possible to make [himself] available to testify in New York." Schmit Aff., dated Dec. 21, 1996, at ¶ 6. Since no trial date has been set in this case, it is quite possible that Schmit will be available to testify in New York at trial.

factors generally applied by courts in this Circuit. *See McCrystal v. Barnwell County*, 422 F.Supp. 219, 224 (S.D.N.Y.1976); Pls.' Mem. at 19–20. The decision whether to transfer a case is left to the discretion of the district court. *See Gulf Oil*, 330 U.S. at 508, 67 S.Ct. at 843; *see also Kanbar v. U.S. Healthcare, Inc.*, 715 F.Supp. 602, 605 (S.D.N.Y.1989).

Since Plaintiffs do not dispute that Chief Judge Sear applied the appropriate law governing transfer motions, Plaintiffs essentially argue that Chief Judge Sear reached incorrect factual conclusions in applying the law. This Court, absent a showing that the previous decision is entirely unsupported by the facts, will not second-guess the Louisiana court's factual conclusions, which were based upon the appropriate factors under the law. Because Plaintiffs have provided no evidence that the previous decision was unsupported by the facts, the Court finds reconsideration on this basis without merit.

Upon reviewing the December 1995 Order, the Court must first note that Chief Judge Sear presided over five years of discovery in this and the other related actions. Thus, this Court does not have as complete a picture as the Louisiana court did in considering the transfer factors. In an earlier stage of this litigation, it was *Plaintiffs* who relied upon this very point in an effort to leave any transfer decision in the hands of the Louisiana court. After the 1990 Report was issued, Plaintiffs filed objections to the Magistrate Judge's Report and Recommendation, arguing that "the decision as to where this case will be tried will initially be made by Judge Sear. At that time he will have a complete and proper record to determine the appropriate place of trial." *See* Pls.' Objections to Report and Recommendation at 2. Now that Plaintiffs find the trial forum unfavorable, they urge this Court to disregard Chief Judge Sear's determination.

Chief Judge Sear's analysis began by noting that this action could have been brought properly in the District of Nebraska.[7] *See In re Taxable Municipal Bond*, 1995 WL 766339, at *1. Chief Judge Sear then deter-

mined that many of the transfer factors were neutral in this case. Plaintiffs do not dispute these findings as to: (1) convenience of the parties, *see id.* at *2; Pls.' Reply Mem. at 18, and (2) ease of access to sources of proof, *see* 1995 WL 766339, at *2; Pls.' Reply Mem. at 23 n. 14. Plaintiffs only challenge Chief Judge Sear's conclusions as to: (1) convenience of the witnesses, (2) availability of process to compel witness attendance, (3) situs of the relevant events, (4) imposition on a New York jury, and (5) application of state law.

### a. *Convenience to Witnesses*

Chief Judge Sear found that the convenience to witnesses "does not seem to militate strongly in favor of a Nebraska forum," since the witnesses identified are located throughout the country, including New York and Nebraska. *In re Taxable Municipal Bond*, 1995 WL 766339, at *2. The Chief Judge added that despite Plaintiffs' argument that "a significant number of its witnesses reside in Nebraska, it has made no showing of the necessary/important witnesses and what their testimony will be." *Id.* (citation omitted). Plaintiffs now reargue to this Court that notwithstanding the fact that "the witnesses in this case are scattered throughout the country, by far the greatest number of witnesses are located in Nebraska." Pls.' Reply Mem. at 18. To support this proposition, Plaintiffs attach the same witness list submitted to Chief Judge Sear. Without any new submissions by Plaintiffs on this point, the Court refuses to re-examine the analysis by the Louisiana court on this same issue. Nor does the Court agree with Plaintiffs' contention that Chief Judge Sear's analysis of this factor "implicitly concedes it does favor Nebraska." *See* Pls.' Reply Mem. at 19. Thus, the Court finds Plaintiffs' argument meritless.

### b. *Availability of Process to Compel Witnesses*

Plaintiffs also challenge Chief Judge Sear's findings with regard to the availability of process to compel witness attendance. Plaintiffs argue that this factor strongly fa-

---

7. Neither party disputes that, for purposes of Section 1404(a), this action could have been

brought properly in either the Southern District of New York or the District of Nebraska.

vors Nebraska, as Plaintiffs' two critical witnesses are outside the subpoena power of the New York court and unwilling to testify in New York. *Id.* at 19–20. The Court finds this contention unpersuasive.

This is not a case where a defendant is forced to litigate in plaintiff's chosen forum, thereby facing the prospect of being unable to compel witnesses to testify in that forum. To the contrary, Plaintiffs initially chose this forum despite the fact that the action arose out of an issuance of bonds in Nebraska. Plaintiffs made the strategic decision to file this action in New York rather than Nebraska, choosing to accept the risk that potential witnesses residing in Nebraska would not be available to testify here. *Cf. Caribbean Wholesales and Service Corp. v. U.S. JVC Corp.*, No. 93 Civ. 8197, 1996 WL 140251 (S.D.N.Y. March 27, 1996) (finding plaintiff's inability to compel ten allegedly "essential" non-party witnesses to appear at trial insufficient basis for retransfer to plaintiff's chosen forum). As Chief Judge Sear concluded, "this circumstance must have been within Washington National's knowledge at the time it filed suit in the Southern District of New York, and there has been ample opportunity for these witnesses to be deposed." *In re Taxable Municipal Bond,* 1995 WL 766339, at *2. Moreover, despite Plaintiffs' focus on potential witnesses Vellek and Schmit, these are not the only non-party witnesses in this case. If this case were transferred to Nebraska, the parties would face the similar problem of non-party witnesses residing in New York, as well as other states, who could not be compelled to testify at trial. Accordingly, this factor does not strongly favor the transfer of this case to Nebraska.[8]

### c. *Situs of Relevant Events*

Plaintiffs assert that Chief Judge Sears' disregard of Nebraska as the situs of relevant events itself constitutes clear error. *See* Pls.' Reply Mem. at 16–17. Chief Judge Sear found this factor to be neutral: "although certain events related to the bond purchase occurred in or are related to Nebraska, other events took place in New

York." *In re Taxable Municipal Bond,* 1995 WL 766339, at *2. Plaintiffs claim that Chief Judge Sear, as well as defendants, ignore all of the significant ties to Nebraska and overstate the ties to New York. Plaintiffs further contend that Chief Judge Sear misplaced his heavy focus on the fact that Plaintiffs chose to file in New York, since "the action was filed pre-discovery and it was only through discovery that the fraud's fundamental connection to Nebraska was revealed." Pls.' Reply Mem. at 22 n. 13.

The Court recognizes that there are substantial ties to Nebraska in this action. The Court, however, rejects Plaintiffs' contention that the Nebraska connection was only revealed through discovery. In addition, the actions of the numerous New York defendants establish an equally significant New York connection. Based upon Plaintiffs' pleadings, which are consistent on this point with the December 1995 Order, this Court does not find Chief Judge Sear's conclusions to be clearly erroneous. For example, Plaintiffs argued to the Magistrate Judge in 1990 that, as to the securities fraud in the initial distribution of the bonds, "a great majority of the events took place in New York City." Pls.' Mem. of Law in Opp'n to Certain Defs.1 Motion to Stay or Transfer This Action, dated Sept. 4, 1990, at 10. Moreover, Plaintiffs' Second Amended Complaint, filed after the bulk of discovery was completed, alleges that "[a] substantial portion of the activities constituting violations of the aforementioned laws and common law has occurred within the Southern District of New York and the District of Nebraska." *See* Second Amended Complaint ¶ 4. Accordingly, the Court does not find clear error in Chief Judge Sear's determination that the situs of events does not compel transfer to Nebraska.

### d. *Burden on New York Jury*

Plaintiffs also contend that Chief Judge Sear "chose not to address" whether there was a proper basis to impose the burden of examining this case on a New York jury. *See* Pls.' Reply Mem. at 24. Plaintiffs have failed to fully review the December 1995

---

8. Although Plaintiffs have not requested alternative relief in this motion, the Court will entertain a motion for additional discovery (*e.g.,* deposi-

tions of Vellek and Schmit) if Plaintiffs choose to seek such relief.

Order. Chief Judge Sear found that, "[i]nasmuch as New York has some relation to the plaintiff's claims, drawing a jury from that community poses no undue imposition." *In re Taxable Municipal Bond,* 1995 WL 766339, at *3. The Court agrees that there will be no special burden on New York jurors to serve on a case in which the claims of a New York plaintiff for the allegedly fraudulent and/or negligent conduct of numerous New York defendants are at issue.

### e. *Application of State Law*

Finally, Chief Judge Sear found the factor of which state's law applies to be neutral, since it was unclear whether the law of New York, Nebraska, or Minnesota would apply. *See In re Taxable Municipal Bond,* 1995 WL 766339, at *2. Plaintiffs concede that certain claims will be governed by Minnesota or New York law, but maintain that most of the common law claims fall under Nebraska law. *See* Pls.' Reply Mem. at 24. The Court finds that this factor does not provide grounds upon which the Court should reverse the previous ruling. Therefore, as to Plaintiffs' claims regarding the transfer factors, the Court rejects Plaintiffs' contentions that: (1) Chief Judge Sear committed clear error by failing to properly consider any one transfer factor, and (2) the totality of the factors under Section 1404(a) "powerfully point to Nebraska as the only proper forum of this action." *See* Pls.' Reply Mem. at 16–18.

### 2. *Failure to Adopt the 1990 Report*

 Plaintiffs argue that: (1) Magistrate Judge Buchwald's 1990 Report on this non-dispositive issue could only be reversed by a district court if clearly erroneous; (2) Chief Judge Sear's refusal to adopt the 1990 Report without a clearly erroneous or contrary to law finding constitutes error for purposes of this motion; and (3) the 1990 Report is "ripe for confirmation" by this Court. *See* Pls.' Reply Mem. at 4–5, 16. Plaintiffs' argument is unpersuasive.

Although Plaintiffs correctly cite the standard for review of a magistrate judge's non-dispositive ruling, the Court finds this stan-

dard to be inapplicable to the unusual circumstances presented by this litigation.[9] In 1990, this Court referred the transfer issue to a magistrate judge to determine in which forum all stages of this case, pre-trial and trial, should proceed. The 1990 Report recommended that the case should proceed in Nebraska, relying primarily on the pendency of a closely related Nebraska action, *Devlin v. Nebraska Investment Finance Authority, et al.,* No. C.V. 90–0–0217 (D. Neb. filed April 1990). The 1990 Report noted the strong Second Circuit policy " 'favoring the litigation of related claims in the same tribunal in order that pretrial discovery can be conducted more efficiently, duplicitous litigation can be avoided, thereby saving time and expense for both parties and witness, and inconsistent results can be avoided.' " Report and Recommendation, dated Nov. 27, 1990, at 7 (citations omitted). Thus, the efficiency of pretrial proceedings was an issue squarely before the Magistrate Judge.

Before this Court could review the 1990 Report, however, the MDL Panel transferred this case, as well as the *Devlin* action and others, to Louisiana for consolidated pre-trial purposes. The MDL Panel's action superseded this Court's authority to determine where pre-trial discovery and motions should proceed. The transfer order to Louisiana thereby mooted the 1990 Report since pre-trial proceedings would not take place in either New York or Nebraska. When Plaintiffs opposed transfer to Nebraska in 1990, they followed the same reasoning, arguing that "the motion filed by the other defendants for transfer or stay of this action pursuant to 28 U.S.C. § 1404(a) is moot.... At the very minimum, any further proceedings on this issue should be deferred by this Court pending the ruling(s) of Judge Sear on where and how this case shall be tried." Pls.' Objections to Report and Recommendation at 2.

Furthermore, the forum issue raised before Chief Judge Sear, although certainly related to that considered by Magistrate Judge Buchwald, was quite different. First,

---

**9.** Neither party was able to provide the Court with a case factually analogous to this one, and the Court has found no such case.

the Louisiana court had presided over the completion of pre-trial discovery as well as numerous motions to dismiss and for summary judgment. Thus, considerations of pre-trial efficiency were irrelevant, because Chief Judge Sear had to determine only where the trial stage of the case should occur. Second, at the close of discovery in an MDL proceeding, the transferee judge must determine whether to retain the cases for trial, remand the cases to the transferor courts, or transfer the cases pursuant to Section 1404(a). Magistrate Judge Buchwald was not presented with the question whether, after five years of presiding over the pre-trial stages of this case, the Louisiana court should retain the case for trial. Accordingly, the Court finds that Chief Judge Sear was not compelled to review the 1990 Report under a "clearly erroneous" standard in light of the fact that: (1) the MDL Panel transfer order mooted the 1990 Report, and (2) the motion before Chief Judge Sear was distinct from that decided by Magistrate Judge Buchwald.

### 3. *Burden of Proof*

■ Finally, Plaintiffs argue that Chief Judge Sear improperly shifted the burden of proof to Plaintiffs to demonstrate that Nebraska was the proper forum. *See* Pls.' Reply Mem. at 6–7, 16. Plaintiffs contend that, since Chief Judge Sear initially recommended transfer to Nebraska, the defendants had the burden on reargument to demonstrate that New York was the more proper forum. Contrary to Plaintiffs' assertions, however, Chief Judge Sear initially ordered the parties to address only whether he should retain the case for trial in Louisiana or remand to New York. *See* Mem. and Order, dated May 16, 1995, at 3. Plaintiffs urged transfer to Nebraska, and Chief Judge Sear temporarily adopted Plaintiffs' position. Prior to the entry of a transfer order, however, Chief Judge Sear granted certain defendants the opportunity to submit a supplemental brief "on the basis that they were not previously afforded the opportunity to make this argument." *In re Taxable Municipal Bond,* 1995 WL 731693, at *1. In essence, Plaintiffs became the moving party seeking transfer pursuant to Section 1404(a), rather than the traditional remand under Section 1407. At this stage, Chief Judge Sear properly placed the burden on Plaintiffs to demonstrate that Nebraska was a more appropriate forum than New York. Chief Judge Sear found, and this Court agrees, that Plaintiffs failed to meet that burden.

■ In addition, as movants for transfer, plaintiffs face a heavier burden than defendants, as they "must show a change of circumstances that has taken place since the filing of suit in order to prevail." *Harem–Christensen Corp. v. M.S. Frigo Harmony,* 477 F.Supp. 694, 698 (S.D.N.Y.1979) (citation omitted) (denying plaintiff's transfer motion despite fact that alleged incident occurred in plaintiff's proposed forum); *see also Crane v. Metro–North Commuter Railroad,* No. 87 Civ. 2876, 1989 WL 74954, at *3 (S.D.N.Y. June 26, 1989) (denying plaintiff's motion to transfer absent change in circumstances or severe prejudice). Chief Judge Sear rejected Plaintiffs' argument that the unavailability of witnesses in Nebraska constituted a change in circumstances. Without further evidence, Plaintiffs have failed to meet the threshold burden of establishing a change in circumstances necessary for a court to consider a plaintiff's motion to transfer. Accordingly, the Court will not reconsider the previous transfer decision on these grounds.

## CONCLUSION

For the foregoing reasons, the Court hereby denies Plaintiffs' motion, pursuant to 28 U.S.C. § 1404(a), to transfer this action to the District of Nebraska.

It is So Ordered.