**REMINGTON PRODUCTS, INC., Plaintiff,**

v.

**NORTH AMERICAN PHILIPS, CORP., et al., Defendants.**

**Civ. A. No. B 82–56 (RCZ).**

United States District Court, D. Connecticut.

Jan. 7, 1991.

**53**

Thomas P. Meehan, David Barmak, Randell C. Ogg & Douglas E. Fierberg, Sherman, Meehan & Curtin, P.C., Washington, D.C., and Dennis N. Garvey, New Haven, Conn., for plaintiff.

William E. Willis, Garrard R. Beeney, John L. Hardiman, Yvonne E. Facchina, Sullivan & Cromwell, New York City, Peter D. Clark, Williams, Cooney & Sheehy, Bridgeport, Conn., for defendants.

## MEMORANDUM OPINION

ZAMPANO, Senior District Judge.

### Background

On February 3, 1989, this Court issued a ruling granting defendants' motion for summary judgment on the issue of antitrust injury. *Remington Products, Inc. v. North American Philips Corp.*, 717 F.Supp. 36, 36–48 (D.Conn.1989) ("*Remington I*"). Subsequently, plaintiff moved for reconsideration in light of *R.C. Bigelow, Inc. v. Unilever, N.V.*, 867 F.2d 102 (2d Cir.), *cert. denied, Thomas J. Lipton, Inc. v. R.C. Bigelow,* — U.S. —, 110 S.Ct. 64, 107 L.Ed.2d 31 (1989). Upon reconsideration, the Court denied defendants' motion on July 10, 1989. 717 F.Supp. at 48–49 ("*Remington II*").

Following the Supreme Court's recent decision in *Atlantic Richfield Co. v. USA Petroleum Co.*, — U.S. —, 110 S.Ct. 1884, 109 L.Ed.2d 333 (1990) (hereinafter "*ARCO*"), defendants now move for relief from the Court's order in *Remington II* pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. Defendants submit that this Court should vacate *Remington II* and grant their motion for summary judgment.

### Discussion

#### I. *Procedural Issues*

##### A. Applicability of Rule 60(b)

Federal Rule of Civil Procedure 60(b) provides in pertinent part: "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding...." Defendants argue that

Rule 60(b) authorizes this Court to grant relief from its *Remington II* ruling denying defendants' motion for summary judgment. Plaintiffs argue that the Rule does not apply because *Remington II* was not a "final order" under the rule, and the Court agrees.

■ Rule 60(b) applies only to final determinations and not to interlocutory orders. *Fennell v. TLB Kent Co.*, 865 F.2d 498, 501 (2d Cir.1989); *Grand Union Equip. Co. v. Lippner*, 167 F.2d 958, 961 (2d Cir.1948); *Indemnity Ins. Co. v. Reisley*, 153 F.2d 296, 299 (2d Cir.1945), *cert. denied*, 328 U.S. 857, 66 S.Ct. 1349, 90 L.Ed. 1629 (1946). The *Remington II* order denying defendants' motion for summary judgment was interlocutory rather than final. *See Pacific Union Conference of Seventh–Day Adventists v. Marshall*, 434 U.S. 1305, 1306, 98 S.Ct. 2, 3, 54 L.Ed.2d 17 (1977) (an order denying summary judgment is not a "final order or decision" under 28 U.S.C. § 1291, therefore it is not appealable; it is reviewable only pursuant to the provisions for interlocutory appeal set forth in 28 U.S.C. § 1292(b)).[1] *See Clark v. Kraftco Corp.*, 447 F.2d 933, 935 (2d Cir.1971) ("As Judge Tyler has retained jurisdiction over this suit and further action by him on the merits is necessary, the order appealed from is one made in the course of a continuing litigation. Therefore, ... we conclude that it is interlocutory rather than final.").

### B. Consideration of the Law of the Case Doctrine

■ Defendants claim that even if they were not entitled to reconsideration under Rule 60(b), the Court has the inherent power to rescind its *Remington II* order. Plaintiffs argue that the law of the case doctrine prohibits the Court from doing so. "It is well established that the interlocutory orders and rulings made pretrial by a district judge are subject to modification by the district judge at any time prior to final judgment,...." *In re United States*, 733 F.2d 10, 13 (2d Cir.), *later app.*, *In re "Agent Orange" Product Liability Litigation*, 745 F.2d 161 (2d Cir.1984). However, while courts have the power to reverse their prior interlocutory rulings, an exercise of this power requires consideration of a rule of practice known as "law of the case." Under the law of the case doctrine, a decision made at one stage of the case becomes binding precedent to be followed during the rest of the litigation. 1B J. Moore, J. Lucas, & T. Currier, *Moore's Federal Practice* ¶ 0.404[1], p. 117 (1988) (hereinafter "Moore's"). Obviously, "efficient disposition of the case demands that each stage of the litigation build on the last, and not afford an opportunity to reargue every previous ruling." 1B *Moore's* ¶ 0.404[1] at 118. While law of the case is a rule of practice and not a limit on a court's authority, generally it is strictly followed. 1B *Moore's* ¶ 0.404[1] at 120. The Second Circuit has stated:

> Under the law-of-the-case doctrine, we will generally adhere to our own earlier decisions on a given issue in the same litigation. Though the issue is not closed with all of the finality of *res judicata*, and though in appropriate circumstances we may exercise our discretion to review the earlier ruling, the strong policy favoring finality impels us to exercise the power to review such rulings only sparingly.

*U.S. v. Adegbite*, 877 F.2d 174, 176 (2d Cir.) (citations omitted), *cert. denied*, *Obalaja v. United States*, — U.S. ——, 110 S.Ct. 370, 107 L.Ed.2d 356 (1989).

■ However, any of three circumstances may justify reconsideration of an earlier decision in the case: 1) an intervening change in controlling law; 2) new evidence; or 3) the need to correct a clear error of law or to prevent manifest injustice. *Adegbite*, 877 F.2d at 176. *See Baden v. Koch*, 799 F.2d 825, 828 (2d Cir.1986) (finding no intervening change of law). As the Second Circuit reasoned:

---

1. Indeed, defendants' own actions demonstrate that *Remington II* was not a final order subject to appeal. Shortly after the Court decided *Remington II*, defendants moved to certify the ruling for immediate interlocutory review pursuant to 28 U.S.C. § 1292(b), rather than appeal as of right under § 1291 which applies to final orders.

[I]n applying the principle of law of the case, we must give serious consideration to defendants' contention that Supreme Court decisions subsequent to [our prior ruling] have demonstrated that the assumption on which we acted without contest from them was in error. *We unhesitatingly accept that ... "if, before a case in district court has proceeded to final judgment, a decision of the Supreme Court demonstrates that a ruling on which the judgment would depend was in error, no principle of 'the law of the case' would warrant a failure on our part to correct the ruling."* Defendants problem is the requirement of demonstration. It is not enough ... that defendants could now make a more persuasive argument ... than we would have thought likely when the case was last here.... "[M]ere doubt on our part is not enough to open the point for full reconsideration." The law of the case will be disregarded only when the court has "a clear conviction of error" with respect to a point of law on which its previous decision was predicated.

*Fogel v. Chestnutt*, 668 F.2d 100, 109 (2d Cir.1981) (emphasis added), *cert. denied, Currier v. Fogel*, 459 U.S. 828, 103 S.Ct. 65, 74 L.Ed.2d 66, *reh'g denied, Chestnutt v. Fogel*, 459 U.S. 1059, 103 S.Ct. 478, 74 L.Ed.2d 625 (1982).

Therefore, if the Court determines that the *ARCO* decision is a change in the controlling case law, the law of the case doctrine will not bar the Court's modification of its prior ruling.

## II. *Substantive Issues*

### A. Introduction

■■■ This case concerns the application of several fundamental concepts of antitrust law. In order to obtain relief under the antitrust laws, a plaintiff must first establish a violation of an antitrust statute. *See Remington I,* 717 F.Supp. at 44. Once the plaintiff has established a violation, they may be entitled to monetary and/or injunctive relief under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26. As this Court explained: "[W]hen claiming monetary relief under Section 4 the complaining party must show 'actual injury' to its business or property. Conversely, one seeking equitable relief under Section 16 need only show 'threatened' loss or damage." *Id.* However, before a party is entitled to relief under either of these sections, it must demonstrate that the *type* of injury from which they are seeking relief is "antitrust injury." *Cargill, Inc. v. Monfort of Colorado, Inc.,* 479 U.S. 104, 111, 107 S.Ct. 484, 489, 93 L.Ed.2d 427 (1986); *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.,* 429 U.S. 477, 489, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977).[2] "Antitrust injury" is an injury: 1) " 'of the type the antitrust laws were designed to prevent' " *ARCO,* 110 S.Ct. at 1889 (quoting *Brunswick* ); and 2) that are "attributable to an anticompetitive aspect of the practice under scrutiny." *Id.*

### B. *Remington I*

In *Remington I,* the Court found that Remington had failed to raise an issue of material fact as to whether the injuries which it alleged were "antitrust injury," and granted defendants' motion for summary judgment on this issue. 717 F.Supp. at 44–47. In reaching this conclusion, the Court relied on the Supreme Court's decision in *Cargill,* wherein the Court held that a party did not have standing to assert an antitrust claim when it was threatened with suffering lost profits due to increased competition, and when it failed to demonstrate some type of predatory practice. 717 F.Supp. at 36–48.

### C. *Bigelow*

In *R.C. Bigelow, Inc. v. Unilever, N.V.,* 867 F.2d 102 (2d Cir.), *cert. denied, Thomas J. Lipton, Inc. v. R.C. Bigelow, Inc.,* —— U.S. ——, 110 S.Ct. 64, 107 L.Ed.2d 31

---

**2.** As one district court stated: "[T]he federal antitrust laws impose additional standing requirements beyond those required by Article III of the Constitution. The law is clear that a private plaintiff must demonstrate 'antitrust injury' in order to have standing under the Clayton Act to challenge a merger." *First and First, Inc. v. Dunkin' Donuts, Inc.,* 1990 WL 36139, 1990 U.S. Dist. LEXIS 7432, 256 (E.D.Penn. March 27, 1990) (citations omitted).

(1989) the Second Circuit found that where the defendant's post-merger market share was 84%, this percentage: 1) constituted a *prima facie* showing of monopoly power; 2) entitled the plaintiff to a presumption of illegality (that is, that defendant's conduct violated the antitrust laws); and 3) entitled the plaintiff to a presumption of "antitrust injury." 867 F.2d at 108. Therefore, the court found that Bigelow had raised a genuine issue of material fact as to whether it was threatened with "antitrust injury." *See* 867 F.2d at 107.

The court stated:

> Market share data—assuming that it is accurate and indicative of substantial market power to eliminate competition—constitutes sufficient evidence, in and of itself, of antitrust injury to a competitor to create a genuine issue for trial. Bigelow is therefore entitled to the benefit of all reasonable inferences that follow from the alleged deliberate acquisition by merger of substantial monopoly power in the herbal tea market and to a presumption that following the merger [defendant] would be likely to eliminate competition in that market by, *inter alia*, reducing Bigelow's access to supermarket shelf space for its products.

*Id.* at 111.

### D. *Remington II*

In *Remington II*, like the Court of Appeals in *Bigelow*, this Court focused on defendants' post-merger market share. After acquiring the SCHICK brand name and electric shaver assets, defendant North American Phillips Corp. ("NAPC") controlled 55% of the electric shaver industry. Therefore, the Court concluded that Remington had established a "prima facie showing of monopoly power." 717 F.Supp. at 49.

Observing that a post-merger market share of 48.8% is sufficient to establish "*prima facie* illegality" under *United States v. Philadelphia National Bank*, 374 U.S. 321, 83 S.Ct. 1715, 10 L.Ed.2d 915 (1963) and its progeny, the Court found that Remington was also entitled to a "presumption of illegality." 717 F.Supp. at 49.

While the Court did not state expressly that the plaintiff was entitled to a "presumption of antitrust injury" as the Court of Appeals had done in *Bigelow*, it did so by implication:

> Because *Bigelow* mandates that all reasonable inferences must be ascertained from this *prima facie* showing of monopoly power and presumption of illegality, the Court must modify its earlier ruling and deny defendants' motion for summary judgment with respect to the issue of antitrust injury.

### E. The *ARCO* Case

Before analyzing *ARCO*'s potential significance to *Remington II*, the Court offers this brief summary of the decision. ARCO is an integrated oil company that, *inter alia*, sells gasoline to consumers both directly through its own stations and indirectly through ARCO brand dealers. USA Petroleum Company ("USA"), is an independent retail seller of gasoline which, like other independent retailers, buys gasoline from major petroleum companies for resale under its own brand name. USA's outlets are typically "discount" gas stations that charge less than stations selling equivalent quality gasoline under major brand names. USA competes directly with ARCO at the retail level. 110 S.Ct. at 1887.

In early 1982, ARCO adopted a new marketing strategy to compete more successfully with independent discount sellers such as USA. 110 S.Ct. at 1887–88. ARCO encouraged its dealers to match the independents' retail gasoline prices in various ways; for example, it offered its dealers and distributors short-term discounts called "temporary competitive allowances" and reduced its dealers' overhead by eliminating credit-card sales. As a result, ARCO increased its sales and market share. *Id.* at 1888.

USA alleged that ARCO conspired with gas stations selling its gasoline to fix prices at below-market levels, thereby driving many independent gasoline dealers out of business. USA charged, *inter alia*, that ARCO's vertical, maximum price-fixing scheme constituted an agreement in re-

straint of trade in violation of Section 1 of the Sherman Act. 110 S.Ct. at 1888.

The district court granted summary judgment for ARCO, holding that USA had failed to establish "antitrust injury" under Section 4 of the Clayton Act, which allows damages. On appeal, the Court of Appeals for the Ninth Circuit reversed. Upon review, the Supreme Court articulated the issue in the case as "whether a firm incurs an 'injury' within the meaning of the antitrust laws when it loses sales to a competitor charging nonpredatory prices [3] pursuant to a vertical, maximum price-fixing scheme. The court held that USA had failed to demonstrate that it had suffered any antitrust injury." 110 S.Ct. at 1889.

In reaching its decision, the Supreme Court reaffirmed that "[a] private plaintiff may not recover damages under § 4 of the Clayton Act merely by showing 'injury causally linked to an illegal presence in the market,' but must prove the existence of "antitrust injury." 110 S.Ct. at 1889 (quoting *Brunswick*, 429 U.S. at 489, 97 S.Ct. at 697).

Concerning its decisions in *Cargill* and *Brunswick*, the court stated:

In [*Cargill*], ... we found that a plaintiff competitor had not shown antitrust injury and thus could not challenge a merger that was assumed to be illegal under § 7 of the Clayton Act, even though the merged company threatened to engage in vigorous price competition that would reduce the plaintiff's profits. We observed that nonpredatory price competition for increased market share, as reflected by prices that are below "market price" or even below the costs of a firm's rivals, "is not activity forbidden by the antitrust laws." 479 U.S. at 116, 107 S.Ct. at 492. Because the prices charged were not predatory, we found no antitrust injury. Similarly, we determined that antitrust injury was absent in [*Brunswick*], even though plaintiffs alleged that an illegal acquisition threatened to bring a " 'deep pocket' parent into a market of 'pygmies,' " a scenario that would cause the plaintiffs economic harm. We opined nevertheless that "if [the plaintiffs] were injured, it was not 'by reason of anything forbidden in the antitrust laws': while [the plaintiffs'] loss occurred 'by reason of' the unlawful acquisitions, it did not occur 'by reason of' that which made the acquisitions unlawful."

*Id.* 110 S.Ct. at 1892 (citations omitted).

F. Analysis

According to the defendants, *ARCO* demonstrates that this Court's original construction of *Cargill* and *Brunswick* were correct and, notwithstanding *Bigelow* which must now be limited to its facts, *ARCO* mandates dismissal of Remington's claims.

Defendants correctly observe that in *ARCO*, the Supreme Court emphasized that a plaintiff does not establish "antitrust injury"—regardless of the illegality of the defendant's conduct—unless the injury is the *type* of harm the antitrust laws were designed to prevent, i.e., a reduction of competition. As this court found in both of its prior rulings in this case, Remington's alleged injury is decreased sales due to *increased* competition. *See* 717 F.Supp. at 47–48. Therefore, the Court finds that

---

**3.** "Predation involves deliberate seeking of monopoly power by means other than superior efficiency, by means that would not be employed in the normal course of competition." *Neumann v. Reinforced Earth Co.*, 786 F.2d 424, 427 (D.C.Cir.1986).

A single definition of predatory pricing is difficult to establish:

[In *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986),] we declined to define precisely the term "predatory pricing" but stated instead that "for purposes of this case it is enough to note that respondents have not suffered an antitrust injury unless petitioners conspired to drive petitioners out of the relevant markets by (i) pricing below the level necessary to sell their products, or (ii) pricing below some appropriate measure of cost." ... We have no occasion in the instant case to consider the proper definition of predatory pricing, nor to determine whether our dictum in *Matsushita* that predatory pricing might consist of "pricing below the level necessary to sell [the offender's] products, is an accurate statement of the law."

110 S.Ct. at 1892, n. 10 (quoting 475 U.S. at 585, n. 8, 106 S.Ct. at 1355, n. 8).

Remington has not alleged the appropriate type of harm to constitute "antitrust injury."

In *ARCO*, the Supreme Court explained: Conduct in violation of the antitrust laws may have three effects, often interwoven: in some respects the conduct may reduce competition, in other respects it may increase competition, and in still other respects effects may be neutral as to competition. The antitrust injury requirement ensures that a plaintiff can recover only if the loss stems from [a] competition-*reducing* aspect or effect of the defendant's behavior.... "[P]rocompetitive ... aspects of practices that nominally violate the antitrust laws may cause serious harm to individuals, but this kind of harm is the essence of competition and should play no role in the definition of antitrust damages."

110 S.Ct. at 1894.

The court stated also:

In *Cargill* ... we reaffirmed that injury, although causally related to an antitrust violation, nevertheless will not qualify as "antitrust injury" unless it is attributable to an *uncompetitive aspect* of the practice under scrutiny, since "[i]t is inimical to [the antitrust] laws to award damages for losses stemming from continued competition."

110 S.Ct. at 1889.

Assuming that NAPC's acquisition of SCHICK were unlawful under Section 7 of the Clayton Act, which prohibits mergers that *reduce* competition, Remington's alleged injury of lost profits due to *increased* competition would not be attributable to the aspects of the acquisition that would make it unlawful.[4] Therefore, Remington does not allege "antitrust injury" under *ARCO*.

. Finally, a crucial element of *Remington II*'s analysis is inconsistent with the Supreme Court's pronouncements in *ARCO*. As discussed *supra,* in *Remington II* the Court based its conclusion that Remington had established an issue of fact regarding "antitrust injury" on: 1) the fact that after the merger, NAPC possessed monopoly power; and 2) a "presumption of illegality" as to NAPC's conduct. 717 F.Supp. at 49. At the time, the Court reasoned this way because it interpreted *Bigelow* to require that "all reasonable inferences must be ascertained from th[e] *prima facie* showing of monopoly power and presumption of illegality...." *Id.* However, in *ARCO*, in the context of a motion for summary judgment where the plaintiff was entitled to all beneficial inferences, the Supreme Court expressly "reject[ed]" the contention that "any loss flowing from a *per se* violation ... satisfies the antitrust injury requirement." 110 S.Ct. at 1889. To the contrary, the Court emphasized that " 'proof of a per se violation and of antitrust injury are distinct matters that must be shown independently.' " *Id.* at 1894 (quoting Areeda & H. Hovencamp, *Antitrust Law,* ¶ 334.2c, p. 330 (1989 supp.)). Thus, the Court "decline[d] to dilute the antitrust injury requirement." *Id.* Applying the Supreme Court's standards, this Court finds that Remington has failed to establish a genuine issue of material fact on the issue of "antitrust injury." Therefore, defendants' motion for summary judgment should be granted.

### *Conclusion*

Defendants' motion for reconsideration is GRANTED. Upon reconsideration, defendants' motion for summary judgment on the issue of antitrust injury is GRANTED. In all other respects, this Court's ruling issued on July 10, 1989, remains in effect. SO ORDERED.

---

**4.** As the Supreme Court has observed, "actions *per se* unlawful under the antitrust laws may nonetheless have *some* procompetitive effects, and private parties might suffer losses therefrom." *ARCO,* 110 S.Ct. at 1894.