**Robert CASEY,[1] Plaintiff**

v.

**UNITED STATES of America, Defendant**

**No. CIV. 3:95CV1949(HBF).**

United States District Court, D. Connecticut.

April 9, 2001.

---

1. Plaintiff died on November 20, 1999. Plaintiff's motion to substitute party was granted on March 27, 2000, adding plaintiff Nancy C. Elliott. [Doc. # 80.]

Matthew Auger, New London, CT, for Plaintiff.

Lauren Nash, New Haven, CT, for Defendant.

### *RULING ON PLAINTIFF'S MOTION FOR RECONSIDERATION*

FITZSIMMONS, United States Magistrate Judge.

On September 13, 1995, plaintiff filed this action under the Federal Torts Claim Act ("FTCA"), alleging medical malpractice and negligence on the part of Veterans Administration ("VA") employees. On September 30, 1999, this court granted defendant's oral motion for judgment as a matter of law with respect to plaintiff's allegations that staff at the Newington Veterans Affairs facility was negligent in failing to provide him with Standard Form 95 ("SF 95") which was a prerequisite to bringing a medical malpractice suit against the United States. [Doc. # 66.] Howev-

er, the parties were directed to brief the question of whether, in light of the factual record presented at trial, the statute of limitations for filing a medical malpractice action was equitably tolled by the failure of a VA benefits counselor to properly advise plaintiff about the filing requirements for a medical malpractice action.[2] [*See id.* at 10.] Plaintiff's *Memorandum of Law on Whether Statute of Limitations for Filing Medical Malpractice Claim Should be Equitably Tolled* [Doc. # 72] is hereby construed as a Motion for Reconsideration of the *Recommended Ruling on Defendant's Motion to Dismiss or for Summary Judgment* [Doc. # 28]. For the following reasons, plaintiff's **Motion for Reconsideration [Doc. # 72] is GRANTED, and the Clerk is directed to reopen the case for further proceedings in accordance with this ruling.**

*BACKGROUND*

Robert Casey brought this action against the United States for injuries he allegedly received as a result of medical malpractice committed during and after surgery on his stomach at the West Haven Veterans Affairs Medical Center ("VAMC"). Plaintiff's first stomach surgery occurred at the VAMC on January 6, 1992, to treat his ulcer condition. [Doc. # 71, at 27.] After the surgery, plaintiff filed a claim for service connected disability benefits related to his condition, which was denied in April, 1992. [Doc. # 71, at 28.]

During this time, VAMC doctors told plaintiff that they discovered he had stomach cancer when they took a biopsy during the surgery to repair plaintiff's perforated ulcer. [*See id.,* at 27.] The VAMC released plaintiff on January 16, 1992, on the condition that plaintiff return to the hospital on January 26, 1992, to have a second surgery to remove cancerous portions of his stomach. [*See id.*] After the second surgery, plaintiff was discharged from VAMC on February 8, 1992. [*See id.* at 33–34.] On February 9, 1992, plaintiff was rushed to Backus Hospital in Norwich, Connecticut by his mother and sister-in-law for acute peritonitis allegedly resulting from the second VAMC surgery.[3] [*See id.* at 34.] Plaintiff was discharged from Backus Hospital on February 21, 1992. [*See id.* at 35.] Post-operative care relating to plaintiff's stomach surgeries continued for approximately one year following his release from Backus Hospital. [*See id.*]

In the spring of 1992, plaintiff learned that he did not have stomach cancer even though one-half of his stomach had been removed during the surgery. [*See id.* at 37–38; Pl. Exh. 6, Doc. # 73, Tab 10]. Plaintiff also learned that he was released from VAMC on February 8, 1992, even

---

**2.** Judge Margolis dismissed plaintiff's medical malpractice claim against the United States because plaintiff failed to present his claim in writing to the VA within two years of the accrual of the claim. [*See Recommended Ruling on Defendant's Motion to Dismiss or for Summary Judgment,* Doc. # 28, approved and adopted by Judge Nevas on August 29, 1996.] In that ruling, Judge Margolis rejected plaintiff's argument that the statute of limitations should be equitably tolled due to misconduct on the part of VA benefits counselors. [*See id.* at 6–7.] For the reasons discussed in this opinion, this court believes that the issue of equitable tolling should be revisited.

**3.** A VAMC report dated October 23, 1995, indicated that plaintiff "underwent surgery for peritonitis and dehiscence of the abdominal wound" on February 9, 1992, at Backus Hospital. [Plaintiff's Exhibit 11, Doc. # 73, at tab 2.] "Peritonitis" is defined as the inflammation of the membrane that lines the abdominal cavity and the organs contained therein. STEDMAN'S MEDICAL DICTIONARY, (25th ed., 1990). "Dehiscence" is defined as "a bursting open, splitting, or gaping along natural or sutured lines." *Id.*

though his sutures had not healed properly and he had an infection in the membrane surrounding his stomach. [Doc. # 73, at tab 2.]

Following his discharge from Backus Hospital, and during his year long post-operative treatment at the VAMC, plaintiff claimed to have had numerous conversations with VA benefits counselors concerning his care at the West Haven facility. [Doc. # 71, at 37, 41, 42.] Plaintiff stated that Mr. Lou Turcio and Mr. Donald Dubrock[4] both told him that he should sue the government because of the care he received at the VAMC during and after his stomach surgeries. Turcio testified that he had no personal recollection of discussing the possibility of plaintiff filing a torts claim against the government. [See id. at 124.] Turcio did recall overhearing Robert Begin[5] start a conversation with plaintiff regarding filing the torts claim, but could not remember any specifics of the conversation. [See id. at 119.] Dubrock testified that he recalled conversations with plaintiff regarding plaintiff's dissatisfaction with the treatment he received from West Haven VAMC for his stomach surgeries and discussions about the possibility of plaintiff suing the government regarding his care. [See id. at 181.] However, although Dubrock remembered plaintiff asking his opinion as to whether he should sue the government, he said that he never advised plaintiff to do so. [See id. at 197.]

Plaintiff testified that initially he didn't want to sue the government because he didn't want to believe that his country committed any wrongdoing with respect to his treatment and because he was hoping to gain employment with a government contractor.[6] At no point during these discussions with the plaintiff did any VA employee tell him how to file a claim against the government, provide the proper forms to him, or direct him to available resources to help him file suit against the United States. [See id . at 40, 41.] Plaintiff admitted that he did not ask for this information during those conversations. [See id. at 41.]

During the summer of 1992, plaintiff requested a mental health evaluation at the West Haven VAMC. [See id. at 43.] Plaintiff requested this evaluation because he was "full of rage and anger because [he] had found out [for himself]" about the quality of care he received from the VAMC. [Id.] Plaintiff's request that his mental health treatment be transferred to the Newington VAMC was granted and he received counseling services there through June, 1998. [See id. at 45.] Part of plaintiff's mental health treatment plan included alcohol abuse treatment. [See id. at 44.]

In spring of 1993, plaintiff was admitted to the West Haven VAMC for carpel tunnel surgery on his left hand. [See id. at 48.] As a result of this surgery, plaintiff filed a disability benefits claim in May 1993 for a two month, hundred percent temporary disability. [See id.] Plaintiff testified that benefits counselor Begin filled in all of the information on the form relating

4. Turcio is a VA benefits counselor, while Dobruck is a vocational rehabilitation specialist.

5. Begin, also a VA benefits counselor, testified during his deposition that he recommended that plaintiff file a torts claim against the government, but that at the time plaintiff did not want to do so. [Plf. Exh. # 5, at 13.]

6. Plaintiff served in the Air Force for 20 years, and after retiring he received training in computer science as a disabled veteran through the Department of Veterans Affairs. [Doc. # 71 at 11, 176.]

to the claim and he just signed it and filled in his address. [*See id.* at 49.]

Plaintiff had previously received care for his left wrist at the West Haven VAMC as a service related disability. After retiring from the Air Force, plaintiff received a ten percent disability rating for his left wrist. [*See id.* at 14.] In November 1989, plaintiff underwent surgery on his left wrist at the West Haven VAMC, which left him with a twenty percent disability rating in that wrist. [*See id.* at 17.] On each occasion when plaintiff filed for service connected disability benefits as a result of his wrist injury, the paperwork was filled out and he was guided through the process by Turcio. [*See id.* at 18.]

On June 23, 1993, plaintiff was admitted into the detoxification treatment program at the Newington VAMC after he resumed drinking alcohol.[7] [*See id.* at 52–3.] After plaintiff completed the five day detoxification period, on June 29, 1993, he was evaluated by C. Jackson–White, a physician's assistant at the Newington VAMC. [*See id.* at 127.] Plaintiff testified that during this evaluation he told Jackson–White that he was "angry" about the care he received in connection with his stomach surgery at the West Haven VAMC and that Jackson–White suggested a couple of options to resolve plaintiff's anger, one of which was to go file a claim.[8] [*See id.* at 54.] Plaintiff stated that after this conversation with Jackson–White he immediately went to see Robert Machia, the veterans benefits counselor at the Newington VAMC. [*See id.* at 59.]

Plaintiff testified that he went to Machia's office because he wanted to sue the government and believed that "it would be the only thing that would probably straighten [him] out a little bit, [by] tak[ing] away some of the rage and anger that [he] had." [*Id.* at 60.] Plaintiff stated that he told Machia that he wanted to sue the government for releasing him from the West Haven VAMC when the doctors there knew he had peritonitis. [*See id.*] Machia filled out a form for a service-connected disability claim, which plaintiff signed and dated. [*See id.* at 61–2.] Plaintiff testified that he questioned Machia as to why he was applying for service-connected disability when plaintiff knew that wasn't what he was asking for. [*See id.* at 64.] Plaintiff stated that Machia responded that the claim would be denied quickly and that it would help plaintiff out when he brought suit against the government. [*See id.*] Once the claim came back denied, plaintiff testified that Machia told him he would then see someone else to help him sue. [*See id.* at 65.] Plaintiff stated that at no point did any VA benefits counselors or other personnel tell him how to file a tort claim against the government, provide him with the necessary forms to bring a tort claim, or refer him to anyone who would be able to advise him on bringing suit against the government. [*See id.* at 72–74.]

Machia did not recall the details of his meeting with plaintiff, and based on the form he filled out he was unable to remember discussing plaintiff's right to file a tort claim with him. [*See id.* at 160.] Machia testified that he had never advised a veteran that he needed to file a disability claim prior to filing a tort claim, or that it would be advantageous to do so. [*See id.*] Machia also testified that he never provided

---

7.  Plaintiff received treatment for his alcoholism on two prior occasions, in 1980 and 1987. [*See id.* at 49–50.]

8.  Jackson–White denied ever having a conversation with plaintiff regarding his stomach surgery or ever suggesting that plaintiff sue the government because of his treatment. [*See id.* at 139–40.]

tort claim forms to veterans and would refer those who wanted to pursue a torts claim against the government to the patients' advocate. [*See id.* at 155.]

Plaintiff's claim form was returned denied in November 1995. [*See id.* at 65.] Plaintiff testified that he would call or stop by Machia's office regularly to check up on the status of his claim, and eventually resorted to calling the regional office to find out about his claim. [*See id.* at 69.] Machia testified that he was unable to recall whether plaintiff came in after June 29, 1993, to check on the status of his claim. [*See id.* at 161.]

In the summer of 1994, plaintiff consulted with counsel regarding an unrelated employment matter. [*See id.* at 67.] During this discussion, plaintiff told counsel about his treatment at the West Haven VAMC during and after his stomach surgeries. [*See id.*] Plaintiff testified that this discussion was the first time he learned what a tort claim was. [*See id.*] Shortly thereafter, on September 22, 1994, plaintiff filed Standard Form 95 ("SF–95") initiating a tort claim against the government. [Pl. Exhs. 12, 13.] The Department of Veterans Affairs denied plaintiff's claim as time barred on March 17, 1995.

On September 13, 1995, plaintiff commenced this action.

## DISCUSSION

### I. Law of the Case Doctrine

The government argues that, because Judge Margolis previously ruled on whether equitable tolling would be appropriate in this case, this court is barred from reopening the issue under the law of the case doctrine. [Doc. # 28.]

■ The law of the case doctrine provides that "a legal decision made at one stage of litigation, unchallenged in a subsequent appeal when the opportunity to do so existed, becomes the law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time." *North River Ins. Co. v. Philadelphia Reinsurance Corp.*, 63 F.3d 160, 164 (2d Cir.1995), *cert. denied* 516 U.S. 1184 (1996) (citing, *Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.*, 810 F.2d 243, 250 (D.C.Cir.1987)). The doctrine does not limit or prohibit the court's power to revisit those issues; it "merely expresses the practice of courts generally to refuse to reopen what has been decided." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817, 108 S.Ct. 2166, 2178, 100 L.Ed.2d 811 (1988) (quoting *Messinger v. Anderson*, 225 U.S. 436, 444, 32 S.Ct. 739, 740, 56 L.Ed. 1152 (1912)); *see also LNC Investments, Inc. v. First Fidelity Bank, N.A.*, 173 F.3d 454, 467 n. 12 (2d Cir.1999). However, "a court should be loath to revisit an earlier decision in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice." *North River*, 63 F.3d at 165 (quoting *Christianson*, 486 U.S. at 817, 108 S.Ct. 2166, internal quotation marks omitted).

■ The doctrine "seeks to ensure fair treatment of the parties and to promote judicial efficiency and finality of the proceedings by avoiding duplicative decisionmaking." *Natural Resources Defense Council, Inc. v. Fox*, 30 F.Supp.2d 369, 374 (S.D.N.Y.1998). *See also Remington Products, Inc. v. North American Philips Corp.*, 755 F.Supp. 52, 54 (D.Conn.1991). A court may reconsider a prior ruling under three situations: 1) an intervening change in the controlling law; 2) the availability of new evidence; and 3) the need to correct a clear error of law or to prevent manifest injustice. *See DiLaura v. Power Auth. of State of New York*, 982 F.2d 73, 76 (2d Cir.1992); *Washington Nat'l Life*

*Ins. Co. of New York v. Morgan Stanley & Co., Inc.,* 974 F.Supp. 214, 218–9 (S.D.N.Y. 1997).

## A. Development of a More Complete Record

■ In this case, the court believes that two separate grounds make the law of the case doctrine inapplicable. First, as the court observed in *Washington Nat'l Life Ins.,* "a court may revisit the law of the case where new evidence has surfaced or a more complete record has developed." 974 F.Supp. at 219. *See also, Tischmann v. ITT/Sheraton Corp.,* 1997 WL 195477, *5 (S.D.N.Y.), *aff'd* 145 F.3d 561 (2d Cir. 1998), *cert. denied* 525 U.S. 963, 119 S.Ct. 406, 142 L.Ed.2d 329 (1998) (Finding that the law of the case doctrine inapplicable where a "bit of new evidence regarding the administrative scheme ... was adduced at trial in the form of testimony ...."); *Pineiro v. Pension Benefit Guar. Corp.,* 1999 WL 195131, *2 (S.D.N.Y.) (court took a "fresh look" at prior decision after further

information was presented in the amended complaint). Here, a more complete record was developed through the trial process.[9] It only became apparent then that the evidence on which Judge Margolis made her decision on the issue of equitable tolling was incomplete. For example, she did not have the benefit of knowing plaintiff's prior history of working with the VA benefits counselors, all the details surrounding plaintiff's alleged attempt to initiate legal proceedings against the government,[10] and information regarding whether plaintiff knew how to file a tort claim against the government. All of this information is relevant to evaluating plaintiff's diligence in pursuing his rights and deciding if plaintiff received adequate notice regarding the proper procedure to perfect his tort claim against the government.

Along with the fact that many of the surrounding circumstances were not before Judge Margolis, she was faced with the difficult task of deciding the issue without assessing credibility.[11] It was only

---

9. Although more detailed summary judgment responses by plaintiff could have provided the court with information which could have resulted in Judge Margolis leaving the equitable tolling issue open, this court recognizes that the form of a summary judgment response often is not conducive to laying out a detailed history of the case or evaluating the credibility of various witnesses.

10. For example, although Machia testified that he normally told veterans that they had the option to file both a tort claim and a service connected disability claim, he did not recall what information he provided to plaintiff. Machia also admitted that based on what he wrote on plaintiff's disability form, "they removed half of my stomach because they thought I had cancer, but it was not so," would have a "logical interpretation that somebody screwed up at the hospital." [Doc. # 71 at 170.] This court believes that this provides substantial evidence that the government was aware that plaintiff had a potential tort claim against the government and a

strong argument that plaintiff was attempting to initiate a tort claim against the government during his June 29, 1993, meeting with Machia.

11. The Second Circuit has repeatedly cautioned trial courts not to make credibility determinations at the summary judgment stage, and to limit themselves to deciding whether there are issues of material fact. *See Vital v. Interfaith Med. Ctr.,* 168 F.3d 615, 621–22 (2d Cir.1999); *Rodriguez v. City of New York,* 72 F.3d 1051, 1061 (2d Cir.1995) (listing cases). It is the finder of fact who must assess the credibility of witnesses during trial. *See Vital,* 168 F.3d at 622; *Rodriguez,* 72 F.3d at 1061. *See also Danzer v. Norden Sys., Inc.,* 151 F.3d 50, 57 (2d Cir.1998) (In the context of a motion for summary judgment on discrimination claim, the "issue frequently becomes one of assessing the credibility of the parties ... [which] is necessarily resolved in favor of the nonmovant;" to hold otherwise would turn a summary judgment motion into an "adjudication of the merits.").

after this court was able to hear testimony from all of the witnesses that it was able to make a credibility determination on issues crucial to deciding whether plaintiff acted reasonably and diligently, and whether the VAMC fulfilled its duty to plaintiff in providing him with the information necessary to pursue a tort claim against the government. This court now believes that these are material questions of fact which should not have been decided at the summary judgment stage. *See Independent Order of Foresters v. Donald, Lufkin & Jenrette, Inc.,* 157 F.3d 933, 942 (2d Cir.1998) (genuine issues of material fact regarding the equitable tolling issue precluded district court's grant of summary judgment on limitations grounds); *Eidshahen v. Pizza Hut of America, Inc.,* 973 F.Supp. 113, 116 (D.Conn.1997) (denying summary judgment because question of fact whether the statute of limitations was equitably tolled).

The additional information available to the trial court expanded the record reviewed by Judge Margolis and allowed a more complete and thorough analysis of the equitable tolling issue than would have been possible in the summary judgment context.

## B. The Need to Prevent Manifest Injustice

The court is also persuaded that it must revisit the issue of equitable tolling in order to prevent manifest injustice. One of the exceptions to the law of the case doctrine is the "need to correct a clear error of law or to prevent manifest injustice." *DiLaura v.. Power Auth.,* 982 F.2d 73, 76 (2d Cir.1992). *See also Agostini v. Felton,* 521 U.S. 203, 236, 117 S.Ct. 1997, 2017, 138 L.Ed.2d 391 (1997); *Doctor's Assocs., Inc. v. Distajo,* 107 F.3d 126, 131 (2d Cir.1997), *cert. denied* 522 U.S. 948, 118 S.Ct. 365 (1997); *Virgin Atlantic Airways, Ltd. v. Nat. Mediation Bd.,* 956 F.2d 1245, 1255

(2d Cir.1992), *cert. denied* 506 U.S. 820, 113 S.Ct. 67, 121 L.Ed.2d 34 (1992).

The court reaches this conclusion upon consideration of the record as a whole and after weighing the credibility of the witnesses at trial. As discussed above, critical facts regarding plaintiff's knowledge and understanding of his rights to file a tort claim against the government, the VAMC benefits counselors' failure to fulfill their duty to plaintiff in providing him the proper paperwork to perfect his claim, the VAMC staff's knowledge of the potential tort claim, and the on-going history between plaintiff and the VAMC staff regarding the filing of benefit claims were all developed more fully during trial. It became apparent that the previous ruling declining to equitably toll the statute of limitations was premature, as the court could not have considered all of the circumstances and the actions of the parties in dismissing the claim on statute of limitations grounds. *See DiLaura v. Power Auth.,* 982 F.2d 73, 77 (2d Cir.1992) ("[T]he doctrine of law of the case permits a change of position if it appears that the court's original ruling was erroneous." (citations omitted)). *See also Independent Order of Foresters,* 157 F.3d at 942; *Eidshahen,* 973 F.Supp. at 116. After hearing evidence not available to Judge Margolis, this Court finds it would work a manifest injustice to adhere to the prior ruling, the effect of which would be to deny plaintiff a full opportunity to present his claims. Thus, the question of whether the statute of limitations was equitably tolled must be reconsidered.

## II. Equitable Tolling

Under the FTCA, a claim against the government is "forever barred unless it is presented in writing to the appropriate federal agency within two years after such claim accrues or unless action is be-

gun within six months after the date of mailing ... of notice of the final denial of the claim by the agency to which it was presented." 28 U.S.C. § 2401(b). In order to be presented in writing, a claim for personal injury must use the government's SF 95, unless the "agency is given sufficient written notice of the circumstances of the underlying incident to enable it to investigate the claim and respond by settlement or defense." *Blue v. United States,* 567 F.Supp. 394, 397 (D.Conn.1983) (adopting the Fifth Circuit's reasoning in *Adams v. United States,* 615 F.2d 284, 289 (5th Cir.1980), clarified, 622 F.2d 197, 197 (5th Cir.1980)). "In most circumstances, adequate notice must include both a statement of the factual details of the underlying incident and a demand for a sum certain in damages." *See id.*

In the case at bar, there is no dispute that plaintiff failed either to submit the SF 95 or provide a "demand for a sum certain" to the appropriate agency within the two years after his claim accrued. However, based on the West Haven VAMC reports,[12] plaintiff's June 29, 1993, claim for service-connected disability benefits and a letter from the Chief of Staff at the West Haven VAMC to plaintiff discussing the hospital's own investigation,[13] the government had complete notice of the facts and circumstances surrounding plaintiff's surgeries and subsequent discharge from the hospital well within two years of that discharge. Plaintiff submitted a SF 95 and an amended SF 95 on September 22, 1994, more than two years after his discharge from the hospital and his discovery that he did not have cancer. [Pl. Exs. 12, 13.] Since plaintiff did not provide statutorily

adequate notice to the agency within two years, the question that must be answered is whether the statute of limitations was extended by the doctrine of equitable tolling.

■ Equitable tolling allows a plaintiff to sue after the "statutory time period has expired if they have been prevented from doing so due to inequitable circumstances." *Stanfill v. United States,* 43 F.Supp.2d 1304, 1307 (M.D.Ala.1999). *See also Iavorski v. United States Immigration and Naturalization Serv.,* 232 F.3d 124, 129 (2d Cir.2000) ("A statute of limitations may be tolled as necessary to avoid inequitable circumstances."). The doctrine of equitable tolling is "applied as a matter of fairness where a plaintiff has been prevented in some extraordinary way from exercising his rights." *James v. United States of America,* 2000 WL 1132035, *2 (S.D.N.Y.), citing Johnson v. Nyack Hosp.,* 86 F.3d 8, 12 (2d Cir.1996).

■ The Supreme Court in *Irwin v. Dep't of Veterans Affairs,* found that the principle of equitable tolling should apply to cases against the government brought under statutes that waive sovereign immunity. 498 U.S. 89,95–96, 111 S.Ct. 453, 457–58, 112 L.Ed.2d 435 (1990). Although the Second Circuit has not directly addressed the issue, many federal courts have found that the statute of limitations found in the FTCA may be equitably tolled. *See, e.g., Perez v. United States,* 167 F.3d 913 (5th Cir.1999); *Alvarez–Machain v. United States,* 107 F.3d 696, 701 (9th Cir.1996); *Glarner v. United States Dep't of Veterans Admin.,* 30 F.3d 697, 701

12. Department of Veterans Affairs Rating Decision Report, dated October 23, 1995. [Plaintiff's Exhibit 11].

13. Letter from Colin Atterbury, dated October 8, 1992. [Plaintiff's Exhibit 14.] (Indicating that hospital undertook independent investi-gation into plaintiff's case. Hospital reviewer "concluded that the problem that occurred could have been identified prior to discharge" and suggesting "most physicians would have handled the case differently." ).

(6th Cir.1994); *Krueger v. Saiki*, 19 F.3d 1285, 1286 (8th Cir.1994), *cert. denied*, 513 U.S. 905, 115 S.Ct. 269, 130 L.Ed.2d 187 (1994); *de Casenave v. United States*, 991 F.2d 11, 13 (1st Cir.1993); *Hyatt v. United States*, 968 F.Supp. 96, 101 (E.D.N.Y.1997).

When assessing whether equitable tolling is appropriate in an action against the government, the *Irwin* Court stated:

> federal courts have typically extended equitable relief only sparingly. We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights.... [T]he principles of equitable tolling described above do not extend to what is at best a garden variety claim of excusable neglect.

498 U.S. at 96, 111 S.Ct. at 457–58. Although the Supreme Court in *Irwin* offered specific examples of when equitable tolling should be applied, the lower courts have not restricted the doctrine to those situations.

■ Equitable tolling does not require any misconduct on the part of the defendant. *See Canales v. Sullivan*, 936 F.2d 755, 758 (2d Cir.1991) (rejecting the position that equitable tolling is permitted only in situations involving misconduct). *See also Stanfill v. United States*, 43 F.Supp.2d 1304, 1309 (M.D.Ala.1999), *citing*, *Browning v. AT & T Paradyne*, 120 F.3d 222, 226 (11th Cir.1997). "A claimant need not necessarily show affirmative misconduct to avail himself of equitable tolling; rather, he must show that a failure to meet a filing deadline was, in a phrase, out

of his hands." *Bartus v. United States*, 930 F.Supp. 679, 682 (D.Mass.1996).

■ Courts have found that the failure of VA staff to provide a claimant with SF 95 violates a legal duty owed to the claimant by the government. *See Glarner*, 30 F.3d at 701; *James v. United States*, 2000 WL 1132035, *3 (S.D.N.Y.). The failure to provide claimants with a SF 95 when VA officials learned of the potential tort claim tolls the statute of limitations until the claimant was actually informed of the proper filing requirements. *See id.* at *4. In so holding, these courts relied upon 38 C.F.R. § 14.604(a), promulgated by the Department of Veterans Affairs, which provides:

> Each person who inquires as to the procedure for filing a claim against the United States, predicated on a negligent or wrongful act or omission of an employee of the [VA] acting within the scope of his or her employment, will be furnished a copy of SF 95, Claim for Damage, Injury, or Death. The claimant will be advised to submit the executed claim directly to the Regional Counsel having jurisdiction of the area wherein the occurrence complained of took place.

*Id.*

This court agrees with the reasoning of the *Glarner* and *James* courts that when VA officials knew that a claimant wanted to file a tort claim against the government, the failure to provide SF 95 to him violated a duty owed to the claimant. Here, there is no disagreement that VA employees failed to provide plaintiff with the SF 95 or inform him of the requirements for filing a tort claim against the government. Although VA officials may argue that they did not know plaintiff wanted to bring suit against the government (and there was evidence that plaintiff was ambivalent

about suing the government), the Court finds that, when plaintiff tried to file a claim on June 29, 1993, VA employees had the requisite knowledge that plaintiff was attempting to initiate legal proceedings against the hospital. On this date, the VAMC had a duty to provide plaintiff with the proper paperwork to file a tort claim. Their failure to do so tolled the statute of limitations until plaintiff reasonably became aware of the filing requirements.

This court was also persuaded by the evidence presented at trial that, until he consulted counsel, plaintiff did not have adequate notice of the proper filing requirements to begin a tort claim against the government. As Judge Margolis noted in her ruling, one of the bases for allowing equitable tolling is that "the claimant has received inadequate notice." The Court finds that the lack of adequate notice provides an additional ground to toll the statute of limitations until the date plaintiff reasonably became aware of the filing requirement. As discussed above, it became clear during the course of trial that no VA employee apprised plaintiff of the procedures he would have to follow to file a tort claim against the government, even though plaintiff discussed the possibility of filing a tort action with his counselors. Although it is undisputed that plaintiff did not ask VA benefits counselors how to file a tort claim, or attempt to initiate a malpractice action until June 29, 1993, there is no evidence that he had actual or constructive knowledge of the filing requirements until he met with a lawyer in the summer of 1994. Plaintiff testified that he thought that he had completed the necessary paperwork on June 29, 1993, and had to wait for it to be denied and returned before he could pursue the claim in court. Given plaintiff's history of working with VA benefits counselors in preparing claim forms, the Court finds that it was reasonable for plaintiff to believe that he was following a proper course of action in filing his malpractice claim.

The court does not believe that this plaintiff's actions constituted a "garden variety claim of excusable neglect." *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96, 111 S.Ct. 453, 458, 112 L.Ed.2d 435 (1990). Here, the VA benefits counselors violated a legal duty owed to plaintiff when they failed to provide him with an SF 95 after it became apparent that plaintiff wanted to pursue a malpractice claim against the government. Plaintiff also had inadequate notice as to the proper requirements for filing a tort claim.

After consideration of the record as a whole and the testimony of all of the witnesses at trial, the Court finds that the statute of limitations was equitably tolled from June 29, 1993, until the summer of 1994 when plaintiff became aware of the filing requirements, or for approximately one year. Since plaintiff filed his SF 95 on September 22, 1994, for a claim accruing in February 1992, plaintiff's malpractice action against the government is not barred by the statute of limitations and may proceed.

*CONCLUSION*

For the reasons set forth in this ruling, **plaintiffs' Motion for Reconsideration [Doc. # 72] is GRANTED.** The Clerk is directed to reopen the case for further proceedings in accordance with this ruling on plaintiff's malpractice claim.